## FRANK E. MAKEEL

*v.*

## ANNA E. HOTCHKISS.

*Opinion filed April 18, 1901—Rehearing denied June 5, 1901.*

'190    311
95a   ¹282

1. RECEIVERS—*power of equity to continue business by receiver.* The authority of a court of equity to continue a business under its receiver and to make the receiver's charges and expenses a charge upon the property is rather an exception to a general rule than a rule itself, and such power must be exercised with great caution.

2. SAME—*when a petition to make costs of receivership a lien upon the property should be denied.* A petition in a hotel receivership asking that the receiver's charges, disbursements and expenses for running the property be made a paramount lien upon the property superior to the rights of the holder of a master's deed under a foreclosure sale, should be denied where the mortgagor was not a party to the receivership suit, which involved only the ownership of the equity of redemption, and where the amount realized at the master's sale was only sufficient to pay the mortgage debt and costs, leaving nothing for the owner of the equity of redemption or to apply upon the receiver's charges. (*Knickerbocker v. McKindley Coal Co.* 172 Ill. 535, distinguished.)

3. ESTOPPEL—*when receiver is estopped to claim lien as against mortgage.* Where a receiver appointed to take charge of a hotel pending the determination of the ownership of the equity of redemption is made a party individually, but not as receiver, to a foreclosure suit begun in another court, and files an answer stating that his possession is held under a lease which is subject to the mortgage and that his rights are subject to the mortgage and the decree foreclosing the same, he is estopped, after decree and sale, to assert any lien in his own behalf and for his own benefit superior to the lien of the mortgage.

4. SUBROGATION—*subrogation is an equitable and not a legal right.* Subrogation is an equitable right and not a legal one, and will not be enforced when it would be inequitable to do so or where it would work injustice to others having equal equities.

*Hotchkiss v. Makeel,* 87 Ill. App. 623, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

One Charles H. Briggs became the owner of the Alabama Hotel property, in Chicago, subject to a deed of trust in the nature of a mortgage given by a former owner to secure an indebtedness of $16,000 to Edward Hotchkiss, and interest. Briggs and Michael J. Dunne exchanged properties, and Dunne thereby became vested with the title to the hotel. This exchange was afterward set aside by decree of court under a bill filed by Dunne charging Briggs with fraud in the transaction. (See *Briggs* v. *Dunne*, 168 Ill. 226.) By that decree, which was entered July 23, 1896, Frank E. Makeel, the appellant, was appointed receiver of the hotel property, and about August 1, 1896, took possession and thereafter operated the hotel, as such receiver, until about March 8, 1897, when, upon the report of the receiver, it appeared that it was not paying expenses under the receivership, and the court entered an order reciting that the property would be conserved by keeping the hotel open, and that the interests of all parties would be promoted by leasing it to Makeel, individually, until May 1, 1898, for $600. Briggs and Dunne thereupon made a written lease to Makeel, in accordance with the order of the court and the agreement between Hotchkiss and Makeel, for the time and rent mentioned. Hotchkiss, the owner of the encumbrance, had not been made a party to the suit, but had in January, 1897, prior to the leasing, filed his bill in the superior court to foreclose his mortgage. He did not make Makeel a party, but claimed in his bill the right to have a receiver appointed in his foreclosure suit. None was appointed, however, and Hotchkiss gave his written consent to the lease of Briggs and Dunne to Makeel. Makeel was not discharged as receiver, but individually operated the hotel under the lease until May 1, 1898, when the lease expired, and thereafter the hotel was operated by him as receiver, under the order of the circuit court, until October 17, 1898, when possession was relinquished to Anna E. Hotchkiss, who obtained the

master's deed for the property by virtue of the foreclosure in the superior court and sale thereunder. The lease to Makeel recited that his possession was subject to the rights of the purchaser at the foreclosure sale, and contained covenants that he would surrender possession of the property to the person entitled, and when entitled, to the master's deed.

After the leasing to Makeel, Hotchkiss amended his bill in the superior court by making Makeel individually, but not as receiver, a party defendant, and on March 17, 1897, Makeel appeared and filed his answer, stating that he was in possession of the property under said lease, which was subject to the deed of trust, and that his rights were subject to said deed of trust and to the decree which should be rendered foreclosing the same. A few days after this answer was filed a decree foreclosing the trust deed was rendered, finding that the debt thereby secured to Hotchkiss was $18,310.16, and that it was a first lien, and in default of payment the property was ordered to be sold. Afterward, in June, 1897, the master sold the premises to Hotchkiss, who assigned his certificate of purchase to Anna E. Hotchkiss, the appellee. Afterward, on September 30, 1898, appellee obtained the master's deed for the property.

After Makeel's lease expired, in May, 1898, and while he was running the hotel as receiver, he made, from time to time, reports to the court in the *Dunne-Briggs case* of his receipts and disbursements, and on September 21, 1898, filed his petition in that case, showing that by the orders of the court approving his reports there was due him for disbursements in excess of receipts $936.76, which amount he had paid out for expenses, repairs, taxes and insurance and in preserving the property, and that, with $500 which had been allowed him for services, there was then due him $1436.76; that Briggs was insolvent; that his equity of redemption had expired, and that no one had any interest in the property except the holder of the

certificate of purchase, who would be entitled to a deed about October 1 following; that there were no funds out of which to pay such balance due him, the receiver, or any further amount which should be allowed to him. The petition then prayed that said balance, and any further amount allowed to him, should be decreed to be a valid and paramount lien on the premises, and if not paid within a day to be fixed, that the premises be ordered sold to satisfy the same.

The appellee having obtained a deed from the master in pursuance of the decree of the superior court, and having been enjoined by the circuit court from interfering with the receiver's possession, on October 7, 1898, intervened, and filed her answer in the circuit court to appellant's petition, denying that the receiver had any right or claim which could be made a charge against the premises which had been conveyed to her in pursuance of the foreclosure and sale under the decree of the superior court. But the circuit court entered an order and decree as prayed in the petition, and allowing appellant $500 in addition, for his services as receiver, and directing that the whole amount, reduced by small deductions to $1917.42, should be paid to the receiver, and if not so paid by some of the parties to the suit or persons interested in the property, by a day fixed, that the property should be sold by the master to satisfy the same, the amount being by the order and decree made a first lien and charge upon the property. On appeal by Anna E. Hotchkiss the Appellate Court reversed this decree and remanded the case, with directions to dismiss the petition. From this judgment of the Appellate Court Makeel took this appeal.

FRANK W. YOUNG, THOMAS E. D. BRADLEY, and ROBERT J. FRANK, for appellant.

FREDERICK ARND, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

We do not find it necessary in this case to consider the extent of the power of a court of equity when it takes possession, by a receiver, of property used in a business enterprise and involved in litigation, and carries on such business by its receiver pending litigation, to make the expenses of the receivership a lien upon such property superior to prior liens. That courts of equity have and exercise such power, to a limited extent, in the control and operation of railroads and of other property and business impressed with a public interest cannot now be questioned. But it is a power to be used sparingly and with great caution. (Am. & Eng. Ency. of Law, sec. 20, p. 392, and cases there cited.) It seems also that the same doctrine has been applied in some cases to property of a different character, used in the business of private individuals or corporations, where the expenses of the receivership appeared to be necessary to preserve the property from destruction or waste and in conserving the interests of those who might succeed in establishing their superior right or title. *Beckwith* v. *Carroll,* 56 Ala. 12; *Karn* v. *Rorer Iron Co.* 86 Va. 754; *Thornton* v. *Highland, etc. Railroad Co.* 94 Ala. 353; 105 id. 224; *Ellis* v. *Vernon Ice Co.* 23 S. W. Rep. 858; *Cake* v. *Mohun,* 164 U. S. 311.

In *Beckwith* v. *Carroll, supra,* it was said: "When it becomes the duty of a court of equity to take property under its own charge, through a receiver, the property becomes chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services. He is the officer and agent of the court, essential to its own efficiency in the protection of things so situated, to keep them under its control until such expenses and allowances are paid or secured to be paid." This was quoted with approval in *Knickerbocker* v. *McKindley Coal Co.* 172 Ill. 535, where it was further said (p. 547): "The object of appointing a receiver is to preserve the property for the benefit of all

parties interested. Sometimes this object is best attained by continuing a business. When this is done, the court has the right, although it should exercise such right with great caution, to make the expenses of such business chargeable upon the *corpus* of the property if the income is not sufficient to pay the same. Of course, such expenses must be charged first upon the net income, but when that is not sufficient they may be charged upon the property itself, or upon its proceeds after sale. It has been held that although this authority of a receiver to incur indebtedness in order to keep the business a 'going concern' until the rights of the parties are adjusted and a sale is effected, ordinarily arises only in cases of railroad companies, yet the same rules may be applied in other cases, under like circumstances,"—citing *Hopfensack* v. *Hopfensack,* 61 How. Pr. 498, *Ellis* v. *Vernon Ice, Light and Water Co.* 86 Tex. 109, *Espuella Land and Cattle Co.* v. *Bindle,* 11 Tex. Civ. App. 262, *Thornton* v. *Highland Avenue and Belt Railroad Co.* 94 Ala. 353, and *Highland Avenue and Belt Railroad Co.* v. *Thornton,* 105 id. 225.

It is contended by counsel for appellant that what was said in the *Knickerbocker case* is applicable to the case at bar and should be decisive of it. A careful examination of the case, however, will disclose marked differences between it and the one under consideration. Bearing in mind that the authority contended for is rather an exception to a general rule than a rule itself, and is liable to great abuse even when applied to railroads and other property and business affected with a public interest, and is to be exercised with great caution, it is clear to us that the doctrine contended for cannot properly be applied to the case at bar. In the *Knickerbocker case* the question arose between parties to the suit, where the receiver had been appointed on agreement or on the motion of Gore, who having died was succeeded as complainant by Knickerbocker, his executor; and it was Knickerbocker, the representative of Gore, who objected in that

case to making the receiver's expenses a charge upon his property. The mortgage on the property was paid in full, and it was not sought to make the receiver's expenses or obligations for necessaries in running the hotel a lien on the property superior to the mortgage lien, but it was the case of intervenors seeking to recover for coal and groceries furnished to the receiver while running the hotel and to have the claim made a lien on the property, which Gore had redeemed from his mortgage by purchasing it at the sale, and it was said in that case that the receiver, who was appointed on the motion of the complainant, was acting as such when the intervenors furnished the supplies. It was further said (p. 544): "It was while the receiver was thus, with the consent of the appellants, operating and conducting the hotel, and while the furniture and fixtures were in his possession, as receiver, that appellees furnished to said receiver the supplies in question;" and it was then said: "Such being the facts, what is the law applicable to them?" It was also said in that case that the complainants were estopped from saying that the claimants should not be paid. The case at bar is so different in its material facts from the case referred to that it is not governed by the same equitable principles. In the first place, Hotchkiss, the owner of the mortgage lien, was not a party to the suit between Dunne and Briggs, in which the receiver was appointed, and did not ask for his appointment, but commenced and prosecuted to foreclosure and sale another suit in another court, in which he prayed for a receiver of his own. There was no controversy in the *Dunne-Briggs case* as to the mortgage lien, but only as to the ownership of the equity of redemption, and the receiver was appointed and directed to run the hotel by the consent and agreement of Dunne and Briggs, and not of Hotchkiss. The amount realized for the property at the master's sale was only sufficient to pay the mortgage debt and costs, leaving nothing whatever for the owners of the equity of

redemption or to apply on the receiver's charges in the Dunne-Briggs suit. The vested rights of Hotchkiss were not attacked or involved in the case. Only the equity of redemption was in litigation, and, as the facts stood, the costs and charges should have been made a lien and charge on that interest only.

Moreover, we are of the opinion that Makeel is estopped from asserting his right to the alleged lien contended for by him. His agreement with Hotchkiss for the lease to be made to him recited that the premises were subject to the mortgage, and contained a covenant that he would surrender possession to Hotchkiss, or whoever should be entitled to possession under the master's deed, on the termination of his lease. It also recited that Hotchkiss was entitled to a receiver in the foreclosure suit, but waived that right by the agreement. Then, again, after he took possession under the lease,—not as receiver, but as lessee,—Hotchkiss amended his bill in the foreclosure suit, and made him, Makeel, a party, and thereupon Makeel filed his answer, in which he averred that he was in possession of the premises under said lease from Dunne and Briggs, subject to said mortgage then being foreclosed in that suit, and that his possession and rights were entirely subject to the mortgage and to the orders and decrees of the court in said foreclosure suit. Replication was filed, and the court found that all the material allegations of the complainant's bill were true; found the amount due him on his debt and decreed it to be a first lien on the premises; that the premises be sold to pay the same, and that upon such sale the master execute and deliver to the purchaser a certificate of purchase, and that at the end of fifteen months the defendants, and all persons claiming under them, be forever barred, and that the master execute to the legal holder of the certificate a deed of conveyance. We are unable to see why the appellant is not estopped by his covenants and answer from claiming in this case, for

himself, any charge or lien on the property superior to that of Hotchkiss or of the holder of the master's deed. True, he is not claiming anything for the time he held under the lease, but only for the period before the lease and the period after its termination until the premises were surrendered to appellee. Still, he does not claim in any trust or official capacity for another, but only for his own use and benefit for services rendered and for disbursements made. While, as receiver, he was not bound because he did not contract nor answer as such receiver but only in his individual capacity, in so far as he represented the court which appointed him or was the representative or trustee of the interests of others, the estoppel would not arise; but in so far as his own interests are concerned and his right to assert a lien in his own behalf and for his own benefit superior to the mortgage lien, he is estopped by his own acts and covenants, —otherwise, in direct opposition to his answer in the foreclosure suit, and to the recitals and covenants in his agreement with Hotchkiss that Hotchkiss had the superior right and that he would surrender possession on the termination of his lease, and upon which Hotchkiss relied and acted, Makeel, for his own profit and advantage, would be permitted to make his own claim a first lien on the property, and to the extent of the amount of it displace the mortgage lien of Hotchkiss. Surely equity will not permit him to do this, even if the court, in a proper case, had the power to make the cost of the preservation of the property a lien superior to all others.

But appellant contends that to the extent of his claim for disbursements made he is entitled to be subrogated to the rights of those who furnished supplies to him as receiver, and to have the same made a lien on the *corpus* of the property, superior to the mortgage lien. We think it is a sufficient answer to say, that, even if such third persons had the right to such lien, Makeel is not entitled to be subrogated to such right. Subrogation is an

equitable right, and not a legal one, and can be enforced only in equity. It will not be enforced when it would be inequitable to do so or where it would work injustice to others having equal equities. To permit subrogation in this case would not only work injustice to appellee, who succeeded to the title of Hotchkiss, which appellant admitted to be the superior one, but would permit appellant to violate his own contract with Hotchkiss. This, equity will not allow. (24 Am. & Eng. Ency. of Law, 191.)

It is next contended that it was error in the Appellate Court to order that appellant's petition be dismissed, as he might have relief against Briggs. It is sufficient to say that no relief against Briggs was asked, but only that the claim, as allowed, be made a first lien on the property and in default of payment that the property be sold,—and such was the substance of the order of the circuit court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*