## PEOPLE v. METROPOLITAN SURETY CO.

(Supreme Court, Appellate Division, Third Department. December 28, 1911.)

1. PRINCIPAL AND SURETY (§ 5*)—CONTRACTS—CONSTRUCTION.

A surety company's bond, conditioned for payment to the obligee named therein of a rental reserved by the obligee in a written lease of a steamboat, and to secure him from any pecuniary loss resulting from a breach of any of the terms, covenants, or conditions of the lease, in a sum not greater than a penalty named in the bond, was a contract guaranteeing performance of the lease by the principal, or charterer, to the obligee.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 5.*]

2. PRINCIPAL AND SURETY (§ 147*)—SURETY COMPANY—REMEDIES OF CREDITOR—RECOURSE TO INDEMNITY TO SURETY.

The owner of a steamboat leased it at a monthly rental and required the charterer to give bond. The charterer, as principal, deposited money to indemnify a surety company, which thereupon executed a bond to the owner to secure performance of the lease by the charterer. After a breach, the owner's suit against the surety company was dismissed because not brought within the time provided by the bond, and he thereafter attached the principal's indemnity to the surety and recovered judgment against the principal for a greater sum. Held, that the law raised an implied trust in the indemnity given to the surety in favor of the creditor, which, on maturity of his debt by judgment, he might enforce whether the surety had been damnified or not, and irrespective of whether the surety or principal or either were insolvent.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 402–412; Dec. Dig. § 147.*]

3. PRINCIPAL AND SURETY (§ 147*)—REMEDIES OF CREDITORS—RECOURSE TO INDEMNITY TO SURETY—PARTIES.

Where a creditor attaches the principal's indemnity to a surety and obtains judgment against the principal, he may, upon motion, compel the receiver of the insolvent surety to pay over the part of the fund covered by the judgment; no action in the name of the sheriff making the attachment being necessary or proper.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 402–412; Dec. Dig. § 147.*]

4. PRINCIPAL AND SURETY (§ 147*)—REMEDY OF CREDITORS—DEFENSES BY SURETY.

In a creditor's proceeding to enforce a claim, aided by attachment of the principal's indemnity to the surety, in an action resulting in judgment against the principal, it is no answer for the surety to say that it had misappropriated the indemnity fund and did not have it on hand, nor is it any answer for the surety's receiver to say that he did not have the identical money which was deposited with the surety as indemnity.

[Ed. Note.—For other cases, see Principal and Surety, Dec. Dig. § 147.*]

5. REFERENCE (§ 11*)—COUNTERCLAIM.

Where a creditor, in dissolution proceedings against a surety company, is entitled to compel the receiver to pay over to him on the maturity of his debt the indemnity given by the principal to the surety company, and where the surety has sustained costs in the creditor's action against it and counterclaims against the creditor therefor, a reference to ascertain the sum payable to the creditor is proper.

[Ed. Note.—For other cases, see Reference, Cent. Dig. § 27; Dec. Dig. § 11.*]

Kellogg, J., dissenting.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Albany County.

Action by the People of the State of New York against the Metropolitan Surety Company, in which R. Grant Johnson became a party and moved to compel the company's receiver to pay a claim presented by him. From an order of the Supreme Court appointing a referee to take proof and report to the court, Johnson appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, SEWELL, HOUGHTON, and BETTS, JJ.

G. D. B. Hasbrouck, for appellant.
Edward R. Finch, for the People.

HOUGHTON, J. The appellant leased to the Jamestown Exposition Excursion & Steamboat Company a steamship for the period of seven months, beginning the 1st day of May, 1907, at a rental of $900 per month, payable monthly, and the lessee also agreed to pay certain charges and keep the vessel in repair. The lease contained a clause that the charterer should furnish a bond in the sum of $2,500 to guarantee the faithful performance of the contract of leasing. Thereupon the defendant the Metropolitan Surety Company executed such bond at the request of the Exposition Company, which deposited $1,250 as collateral thereto. The bond so furnished bound the principal and surety to pay such sum and secured appellant, named as obligee, from any pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the contract of hiring, and further provided that the surety company should be informed of any breach of the terms of such contract within 30 days, and should not be liable for any greater sum than the penalty mentioned in the bond, nor at all unless proceedings thereon were instituted not later than the 1st day of January, 1908.

The Exposition Company breached its contract, and the appellant brought suit against the surety company after the 1st day of January, 1908, and his complaint was dismissed because the action was brought after that date. Thereupon the appellant brought suit against the Exposition Company, and, it being a foreign corporation, the plaintiff obtained an attachment, and the sheriff attached, as is claimed, the fund which the Exposition Company had deposited with the surety company on the giving of the bond. Judgment was finally obtained against the Exposition Company for $2,951.26, and execution thereon issued to the sheriff who levied the attachment, which execution is presumably outstanding. On January 6, 1909, the above-entitled action was brought by the people to dissolve the surety company on the ground that it was insolvent, and a temporary receiver was appointed, who has since been made permanent receiver, and is now engaged in marshaling the assets of such corporation and has in his hands a sum greater than $1,250.

At the time the surety company gave its bond to the appellant, it executed for the Exposition Company two other bonds, and the Exposition Company demanded and received in cash 50 per cent. of the total of those bonds. Breach of these two latter bonds was made,

and the surety company was compelled to pay a sum greater than the Exposition Company had placed in its hands on all three of the bonds which it had given.

The appellant demanded from the receiver the $1,250 which had been deposited with the surety company by the Exposition Company as collateral security for the bond which had been given, and, upon payment being refused, made a motion to compel such receiver to pay the same over to him. Instead of directing the receiver so to do, the court appointed the referee to take proof and report. From such order Johnson appeals, claiming that he was entitled to have the money paid over to him as matter of law, and that the reference is a useless and unnecessary expense.

We are of opinion this would be so except for the fact that the defendant claims to have paid out $275 of the fund in defending the action which the appellant brought against it, and in which the complaint was dismissed because the action was not brought within the proper time, and also except for the fact that the surety company claims that it holds certain notes of the appellant which are proper offsets to the appellant's claim.

In view of the fact that we are about to affirm the order directing a reference, we deem it our duty to give our views with respect to the appellant's rights in the fund, to the end that the reference may be properly confined and as expeditiously terminated as may be.

[1] The contract of suretyship which the surety company entered into was clearly one guaranteeing performance of the contract by the principal, the Exposition Company, to the appellant, the obligee therein. Belloni v. Freeborn, 63 N. Y. 383; National Bank of Newburgh v. Bigler, 83 N. Y. 51.

[2] The moneys deposited by the principal with the surety were deposited to secure performance of the contract between the appellant and the Exposition Company and to provide a fund for payment of the damages occasioned by its breach, and, a breach having occurred, the law raised an implied trust with respect to the fund in favor of the creditor. Where collateral security is placed by the principal in the hands of his surety to secure performance of a contract or to provide a fund for the payment of damages occasioned by its breach, the law raises an implied trust in favor of the creditor, which on maturity of his debt he may enforce whether the surety has been damnified or not and irrespective of the question whether the surety or principal or either are insolvent. National Bank of Newburgh v. Bigler, supra; Vail v. Foster, 4 N. Y. 312; Crosby v. Crafts, 5 Hun, 327, affirmed on opinion below 69 N. Y. 607; Clark v. Ely, 2 Sandf. Ch. 166; Pratt v. Adams, 7 Paige, 615, 627.

Learned, P. J., in Crosby v. Crafts, supra, in applying the rule, uses the following language particularly apt to the present situation:

"The ground of that principle is that the security given by the principal debtor to the surety is a quasi trust fund for the payment of the debt, that the principal debtor has appropriated it for the security of the debt, and that the creditor has an equitable right to have it thus applied. Vail v. Foster, ut supra. That case illustrates this view. The surety had become insolvent. But he held a bond and mortgage executed by the principal debtor

to indemnify him for his liability. As he was insolvent and could not pay, he could not practically be damnified by reason of his debt. And as to him the creditor was in the same condition as if the surety had been discharged by death, instead of insolvency. But although the creditor could not, in fact, collect anything out of the surety, and although for this reason the surety had never been damnified by his obligation, yet it was held that the creditor was entitled to have the benefit of the securities which had been executed to the surety for his indemnity."

[3] The surety company being insolvent and its funds in the custody of a receiver appointed by this court, an action was not necessary, as is urged by the respondent, or even proper. If the court found that its officer held a trust fund belonging to another, it could upon motion compel him to pay it over to the rightful owner. Riggs v. Whitney, 15 Abb. Prac. 388; Tyler v. Hildreth, 77 Hun, 580, 28 N. Y. Supp. 1042.

[4] Nor would it be any answer to the application to say that the receiver did not have the identical money which was deposited as indemnity with the surety company, or even that the surety company had paid it out to discharge its other obligations. The receiver would be compelled to make the fund good from such moneys as had come to his hands. Standard Oil Company v. Hawkins, 74 Fed. 395, 20 C. C. A. 468, 33 L. R. A. 739. The receiver stands in place of the surety company. It would be no answer by the company to say that it had misappropriated the fund and did not have it on hand, for it would be compelled to make it good. Besides, the general creditors have no right to have the fund swelled by moneys rightfully belonging to another, and it would be a travesty upon justice if the court could not direct its own officer to restore to another a fund to which he was entitled.

The situation is unlike that of an executor of an executor, for in that case the last executor is accountable only for such funds as came to his hands belonging to the estate of which his testator was the executor.

[5] The appellant, after making such deductions as shall be found proper, is entitled to relief irrespective of his attachment or execution, and it is unimportant that the proceeding was not instituted in behalf of the sheriff, as urged by the respondent.

The reference ordered would therefore be improper except for the fact that the surety company claims to have rightly paid out a portion of the fund delivered to it and to have an offset against some portion of it. A reference is proper to ascertain the facts in this regard, to the end that the court may determine whether all or part should be paid over to the appellant.

The order must therefore be affirmed, but without costs. All concur, except KELLOGG, J., dissenting in opinion.

JOHN M. KELLOGG, J. (dissenting). This is an appeal by R. Grant Johnson, the petitioner, from an order made at the Albany County Special Term July 13, 1911, denying his motion asking that certain moneys be applied upon a judgment held by him against the Jamestown Exposition Excursion & Steamboat Company, which or-

der appointed a referee to take proof of the facts and report them to the court with his opinion thereon.

April 5, 1907, the Exposition Company applied to the Surety Company for the issuance of three contract bonds, one of $1,500 to Fred S. Jenks on account of the propeller Ossining, one of $2,500 to R. Grant Johnson on account of the propeller Verona, and one of $5,000 to Edward D. Booz on account of the steamboat Gen. J. A. Dumont. In consideration of the issuance of the bonds, it paid the premium or fee of $90 in advance, and also one-half the amount of said bonds, namely, $4,500, as an indemnity to the said Surety Company. The application was granted April 19, 1907, and the contract bonds were given. They were of substantially equal tenor, except as to the name of the obligee and of the boats and the amounts. By the Johnson bond the Exposition Company, as principal, and the Surety Company, as surety, became held and bound unto him in the sum of $2,500. The bond recited that whereas the principal had entered into a contract for the hiring of the propeller Verona for seven months from May 1, 1907, as provided in the charter party thereto annexed, the condition of the bond was that if the principal would well and truly indemnify and save harmless the said obligee from all pecuniary loss resulting from the breach of any of the terms, covenants, and conditions of the said contract on the part of the principal to be performed, then the obligation to be void, otherwise to remain in full force and effect in law, and provided that the bond was issued subject to conditions therein named, one of which was:

"That in no event shall the surety be liable for a greater sum than the penalty of this bond, or subject to any suit, action or other proceeding thereon that is instituted later than the 1st day of January, 1908."

The Exposition Company defaulted in the performance of each of the charter parties and bonds, and on account thereof the Surety Company was required to pay April 29, 1907, $850 in settlement of the liability on the Jenks bond and about August 21, 1908, $3,250 on account of the Booz bond, together with $279.60 costs and expenses thereon; an action having been timely brought in Virginia against said company thereon.

On the 24th day of July, 1908, said Johnson brought an action against the Surety Company on account of the breach of said charter party and bond, claiming that there was due him thereon $2,844.72 December 1, 1907, in which action, among other defenses, the Surety Company interposed the defense that under the conditions of the bond no action or proceeding could be brought against it after January 1, 1908, and that the said action is barred by that provision in the bond, and that no recovery can be had against the defendant on said bond, which action was duly tried and the complaint dismissed on the ground that the action could not be maintained, not having been brought prior to January 1, 1908, as provided in the bond, with $66.41 costs against the Exposition Company. Thereafter said Johnson, April 28, 1908, brought action against the Exposition Company and served the proper papers purporting to attach the $1,250 paid on account of the Johnson bond, and in said action recovered judgment

December 10, 1908, against said Exposition Company for $2,951.26 and issued execution therefor to the sheriff of New York county. In the proceedings entitled above an order was duly made declaring the Surety Company insolvent on the 6th day of January, 1909, and in marshaling the assets of said company the said Johnson has filed his petition asking that the $1,250 deposited by the Exposition Company with the Surety Company to indemnify said Surety Company on account of the issuance of said bonds be paid to him or applied on such judgment and execution in his behalf, upon which the order appealed from was made. The appellant upon this appeal urges that as matter of law he is subrogated to the said fund and entitled to its payment without a reference; the respondent claiming that the $4,500 was received by it on account of the issuance of the three bonds and that it has paid on account thereof more than the said $4,500, and that there are no funds in its hands in which the appellant is interested, but that if there are the order of reference is proper to determine the amount.

The condition in the bond that an action or proceeding to enforce it must be brought before January 1, 1908, has been adjudged by a decision remaining unreversed to prevent a recovery against the Surety Company on the bond, and by this proceeding it is sought by indirection to accomplish what the appellant failed to recover by direct action. The filing of his petition must be deemed the commencement of an action to enforce the bond, and the condition of the bond referred to is as fatal to this application as it was to the action. The fair meaning of the bond is that if January 1, 1908, lapses without the bringing of an action or the taking of some proceeding to enforce it, the obligee has no further benefits therefrom. If the Surety Company was not liable to him upon the bond, he cannot be subrogated to its rights as to the $1,250 which it retained to indemnify it under the bond so long as the Surety Company has any valid claims against said fund.

There is nothing mysterious about the doctrine of subrogation; "it is purely an equitable right, and being an equity it is subject to the rules governing equity." Pomeroy's Ex. Jurs. vol. 6, § 9220.

"Subrogation is an equitable right, and not a legal one, and can be enforced only in equity. It will not be enforced when it would be inequitable to do so, or where it would work injustice to others having equal equities." Makeel v. Hotchkiss, 190 Ill. 311, 60 N. E. 524, 83 Am. St. Rep. 131.

This money was received by the Surety Company to indemnify it, and, while there is an indebtedness due it arising out of the same transaction in which the money was received, it would not be equitable to turn it over to the petitioner, who was not a party to it and for whose benefit it was not taken. Such action would be most inequitable to the Surety Company and its creditors, and that is a sufficient reason why equity will not apply the doctrine of subrogation in the premises.

It is evident that, if the fund remained in the hands of the Surety Company and belonged to the Exposition Company, it was subject to attachment; but the attachment was subject to any claims which

the Surety Company had against the moneys. And it is apparent that at the time the attachment was issued claims had accrued against the Surety Company greater in amount than the moneys in its hands on account of the Exposition Company. Viewing the appellant, therefore, as merely an attaching creditor, without any claim against the moneys superior to the rights of the Surety Company as a creditor of the Exposition Company, it is apparent that he is not entitled as against it to these moneys. While three bonds were issued to different parties, they were issued under one contract and practically for one consideration. The $4,500 was received as a result of one transaction, and the three parts of the transaction formed such a whole that the Surety Company could not be required by the Exposition Company to deliver up any of the money while the Exposition Company was in default upon any of the bonds in an amount which might use up the entire amount. In my judgment the appellant has no claim upon the fund by attachment or otherwise superior to the rights of the Surety Company therein. While this attachment was levied before the termination of the litigation in Virginia, it is evident that the breach of the bond occurred before the issuance of the attachment, as it is fair to assume that the breach of the Booz bond occurred about the time the other two were breached. The appellant had the right to have his motion determined according to his legal rights. He could not be chargeable with the expense of a reference if his motion had no merits, and is therefore aggrieved by the order of reference. The order should therefore be modified by striking therefrom the provision as to a reference, and as so modified affirmed, without costs to either party.