Cody Trust Company, Plaintiff, v. Hotel Clayton Company et al., Defendants.
William H. Foll et al., Appellees, v. Chicago Title and Trust Company, Appellant.

Gen. No. 9,172.

2

Opinion filed September 9, 1937. Rehearing denied January 10, 1938.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, CASTLE, WILLIAMS & MCCARTHY and A. EDMUND PETERSON, all of Chicago, for appellant; VINCENT O'BRIEN, FRANK J. MADDEN and A. EDMUND PETERSON, all of Chicago, of counsel.

HALL & HULSE, EDWARDS & BLOCK, JOHN V. MOOR-
ADIAN, CHARLES E. JACK and HARRY BREGER, all of
Waukegan, and WILLIAM C. CONNOR and BERNARD J.
JURON, both of Chicago, for appellees; SIDNEY H.
BLOCK, ALBERT L. HALL, MARSHALL MEYER, JOHN V.
MOORADIAN, WILLIAM T. KIRBY and J. E. BAIRSTOW, all
of Waukegan, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the
court.

In trust deed foreclosure cases numbered 23,765 and
35,349 pending in the circuit court of Lake county, in-
terlocutory orders of identical character were entered.
The parties have stipulated that the cases may be con-
solidated for the purpose of this appeal. Although
a complaint for foreclosure was filed in each case, only
one trust deed is involved. The orders, in brief, give
other and further powers to the receiver appointed in
case number 23,765 by directing him to issue receiver's
certificates which are to be made a lien prior to that of
the trust deed, on the mortgaged premises. The ap-
peal is taken under section 78 of the Civil Practice
Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 206; Jones
Ill. Stats. Ann. 104.078, governing appeals from inter-
locutory orders concerning receivers. The validity of
that part of the orders which subordinates the lien
of the trust deed to the receiver's certificates, is ques-
tioned.

On January 1, 1928, the Hotel Clayton Company, a
corporation, executed and delivered to the Cody Trust
Company, its trust deed conveying to the Cody Com-
pany as trustee, real estate and premises in the city
of Waukegan, known as the "Hotel Clayton." The
trust deed was given to secure 250 coupon bonds of the
mortgagor, payable to bearer, aggregating $125,000.
Said bonds matured serially, every six months, be-
ginning January 1, 1930, with final maturity on Jan-
uary 1, 1935. The interest coupons attached to the

bonds were due and payable semiannually after January 1, 1928, and represented six per cent interest on the principal of the bonds. The bonds were sold to the public. It is alleged that the value of the real estate does not exceed $68,450. The trust deed also pledges the rents, issues and profits of the mortgaged premises as security for the payment of the bonds and the coupons.

The trust deed provides, among other things, as follows: That one month after its date, and monthly thereafter, the mortgagor should make sinking fund deposits of money equal to one-sixth of the aggregate amount of the principal and interest maturing on the next succeeding interest date; that if the mortgagor did not pay any bonds or interest coupon when due, the Cody Trust Company, individually, might advance the necessary amount therefor and the bond and interest coupon, so acquired by the Cody Trust Company, would be considered purchased and not paid; that the Cody Trust Company would become subrogated to the rights of the holder of such bond and interest coupon, except that the lien of the trust deed as security for the payment of such bond and interest coupon should be postponed, and to that extent subordinated, to the lien of the trust deed in favor of all other bonds and interest coupons maturing thereafter; that if the mortgagor failed to properly insure the premises, or to pay the taxes thereon, or to keep the premises in proper condition and repair, the trustee is authorized to do so and the amounts advanced by the trustee for any such purposes are to be paid to the trustee by the mortgagor, and are declared to be additional indebtedness secured by the trust deed and a first lien on the premises prior and paramount to the bonds secured by the trust deed.

The trust deed further provides that in case the mortgagor fails to pay any bond or interest coupon

when due, or makes default in the due performance of any covenant of the trust deed, by the mortgagor to be performed: "Trustee has the right to declare the principal of all bonds hereby secured to be due and payable immediately; Trustee, without any action on the part of any bondholder and without the necessity of the possession of any of said bonds or interest coupons, or of declaring said bonds due, may, and upon the written request of the holders of not less than 25% in amount of said bonds then outstanding and upon being satisfactorily indemnified, shall institute such suit or suits, in equity or law, in any court of competent jurisdiction, to enforce and protect any rights of trustee or of the bondholders hereunder as it may deem proper, and especially may institute proceedings to foreclose this trust deed in any manner provided by law and to obtain a sale of the mortgaged premises under order of court." Reasonable compensation of the trustee and costs of foreclosure proceedings are made additional indebtedness secured by the trust deed and made a lien prior to all other indebtedness, secured, in any manner, by the trust deed.

The trust deed provides, further, that, if the mortgagor fails to perform any covenant thereof, the trustee shall be entitled to the immediate possession of the mortgaged premises with power to operate and manage the same, and to apply the rents and profits therefrom to the payment of all necessary expenses of operation, including the maintenance of improvements on the premises; that the costs of so administering the premises, including reasonable compensation to the trustee, are declared to be additional indebtedness, secured by the trust deed and prior and paramount to the lien of the trust deed.

Section 7, Article IX, of the trust deed, is as follows: "It is understood (anything in this trust deed or in the Bonds issued hereunder to the contrary notwith-

standing) that Trustee may (and on the written request of all such Bondholders, and upon satisfactory indemnity, shall) proceed to enforce the rights and remedies available at law or equity to the holders of Bonds and/or Interest Coupons subordinated under the provisions of Section 8 Article III hereof, without notice to or joinder of holders of Bonds and/or Interest Coupons having priority under said Section 8, always provided further, that any such proceedings shall be for the benefit of all holders of such subordinated Bonds and/or Interest Coupons maturing on the same date, without preference or priority among them. All of the covenants, terms, and provisions of this Article IX, shall extend to, and be available in proceedings under this Section 7, including the appointment of a Receiver.''

The provision of the trust deed relative to the appointment of a receiver is in part as follows: ''Upon or at any time after the commencement of any proceeding instituted in the case of default, the court wherein the same is pending, shall, on application of complainant, as a matter of right and without regard to the then value of the mortgaged premises, and without regard to the solvency of Mortgagor, or of any other party liable hereunder, or the then use of the mortgaged premises, appoint a Receiver of the mortgaged premises to collect the rents, issues, and profits thereof, pending foreclosure and sale and during the period of redemption.''

On August 1, 1929, the mortgagor failed to make the sinking fund deposit of $625 due as provided by the trust deed. The Cody Trust Company, as trustee, on November 9, 1928, took possession of the premises, and employed Edward Hall to manage and operate the hotel, and was so in possession of the premises on December 14, 1929, when it filed its complaint in case

number 23,765 for partial foreclosure of the trust deed. The complaint is brought by the Cody Trust Company, "individually and as trustee."

The bill sets forth the failure of the mortgagor to make the sinking fund deposit of August 1, 1929, and that the mortgagor failed to pay the interest coupons maturing on January 1, 1929, and July 1, 1929, totaling $7,500; that the Cody Trust Company, individually, advanced $7,500 to pay the matured coupons and became the purchaser thereof and was subrogated to the rights of the former holders of such coupons; that the fair, customary, and usual charges for services of Edward Hall in managing the hotel, is the sum of $7,200; that the usual and reasonable fee for the trustee in administering the premises, for the benefit of the bondholders, during the time it was in possession thereof, is $7,500, which sums the Cody Trust Company is entitled to, under the terms of the trust deed; that the Cody Trust Company, while in possession of the premises, expended thereon $17,903.23, for necessary repairs on the hotel building; that the mortgagor failed to properly keep the mortgaged premises insured and the Cody Trust Company necessarily expended for the purpose the sum of $3,780.54; that the Cody Trust Company has been compelled to employ attorneys to prepare the foreclosure complaint and represent it in the foreclosure proceeding, and it is liable for the reasonable fee in that behalf; that it will be necessary to advance costs for the foreclosure proceeding; that the Cody Trust Company has paid taxes and special assessments on the premises which the mortgagor failed to pay.

The bill makes various persons who have, or may have, an interest in the premises, parties to the suit, and states that their interest in the premises is subject and inferior to the interest of the Cody Trust

Company, and the lien of the trust deed. The holders of the unsubordinated and unmatured bonds and interest coupons are not made parties, nor does the complaint state that the suit is brought for and on their behalf. The complaint prays that an account may be taken of the amounts due the Cody Trust Company for matured interest coupons purchased by it, and for the expenses made and incurred by it under the terms of the trust deed, and for its compensation as trustee; that the persons liable therefor may be ordered to pay the indebtedness, together with interest, costs, solicitors' fees, master's fees, and other charges; that the amounts so found due may be decreed to be a good, valid, subsisting lien on the premises and on the rents, issues, and profits thereof, such lien to be subject and inferior only to the continuing lien of the said trust deed as security for the remaining and unmatured indebtedness thereby secured; that in the event that the amounts so found due are not paid, the premises may be sold as directed by the court to satisfy the amount decreed to be paid to the Cody Trust Company, together with its costs, fees, and charges, subject, however, to the continuing lien of the said trust deed as security for the remaining and unmatured indebtedness, thereby secured. The bill further prays for further conventional relief with respect to the issuance of master's deed, the appointment of a receiver of the premises and the issuance of summons.

On January 20, 1930, an order was entered in the cause appointing said Edward Hall receiver of the mortgaged premises, and the rents, issues, and profits thereof. The order of appointment authorizes him to collect the rents, issues, and profits and to continue, modify, enlarge, or otherwise change the terms of any lease by any tenant in possession of the premises or any part thereof.

On February 6, 1930, an order was entered in the cause of partial foreclosure, authorizing and empowering the receiver to operate and manage the mortgaged premises as a hotel, and specifically to employ the necessary persons in connection with the operation of the hotel and to make expenditure for laundry and coal. Other orders were also entered authorizing and empowering the receiver to borrow money and to purchase supplies, goods and merchandise as a necessary part of the operation of the hotel. It is not contended that the receiver exceeded the authority and power granted to him by the orders, and it is not disputed but that the expenditures made by him from which receiver's certificates are asked to be issued, as will hereafter appear, were for the operation of the hotel and within the terms of the said orders.

Edward Hall continued as receiver of the premises, under the partial foreclosure proceeding, until August 5, 1935. On July 31, 1935, the Chicago Title and Trust Company, in case number 35,349, as successor trustee to the Cody Trust Company, filed its complaint on behalf of all unsubordinated bonds and interest coupons secured by the trust deed, for the foreclosure of the trust deed and the sale of the premises to pay such bonds and coupons. On August 5, 1935, an order was entered in case number 35,349 extending the receivership to the new case and directing the receiver to segregate all money received by him subsequent to the order, subject to the further direction of the court.

Between the dates of August 8, 1935 and June 23, 1936, petitions were filed in both cases by ten persons who had either earned wages working at the hotel under the receiver, or who had supplied the hotel with laundry service, coal, ice, lumber, or loaned money to the receiver. The petitions allege that the receiver was authorized to take possession of the property, and

to collect the rents thereof, to operate and manage it as a hotel and to employ persons necessary to run it and to make expenditures therefor, including expenditures for laundry and coal; that he was authorized to borrow money to purchase supplies, and merchandise to operate the hotel; that it became necessary for him to borrow money to purchase supplies and hire servants and employees to operate and preserve the hotel business; that the hotel was leased by order of cóurt for a term of years for a certain consideration each month, to be paid to the receiver by the lessees of the hotel; that the receiver did borrow money to purchase supplies and hire servants, and that the money, materials, and services were used to conduct the hotel as a going concern, and that they were necessary for the preservation of the hotel business, and for the benefit of all persons interested in the premises; that the receiver did not have funds to pay the petitioners. They pray for the issuance of receiver's certificates, payable as the court might direct, to bear interest and to be a lien on the premises, the rents thereof, and upon any fund realized from the sale thereof, prior to the lien of all persons having a lien on the premises.

The Chicago Title and Trust Company filed answers to all of the petitions, denying the averments thereof, and setting forth that the complaint filed by the Cody Trust Company sought foreclosure of the lien of the trust deed as security for the payment of certain subordinated indebtedness; that the complaint expressly stated that the lien of the trust deed, as sought to be foreclosed therein, was inferior to its lien as security for the payment of the unsubordinated indebtedness; that neither the owners of the unsubordinated indebtedness nor the trustee, as their representative, were parties to the Cody Trust Company foreclosure case, nor had been given any notice of the pendency thereof; that it would be improper to require the re-

ceiver to pay any indebtedness incurred prior to the extension of the receivership to the Chicago Title and Trust Company case, or any receivership certificates issued in payment thereof, out of funds coming into his possession subsequent to the entry of the order extending the receivership; that it would be improper to provide for the issuance of any certificate which would be a lien on the premises and the rents, prior to the lien of the trust deed as security for the unsubordinated indebtedness.

The petitions and the answers in the respective cases came on for hearing at the same time, September 28, 1936. Thereupon the court entered its order in each case, reciting and finding the facts concerning the incurrence of the obligations of the receiver as set forth in the petitions, to be substantially as in the petitions set forth; that the materials, supplies, and services rendered, and money loaned by the petitioners, were rendered and advanced to the receiver prior to the entry of the order on August 5, 1935, extending the receivership. The order states: "The Court further finds that the said moneys were borrowed, the said supplies, goods and merchandise were purchased and said servants and employees were hired at the direction, and with the full knowledge and consent of the said Receiver, and that the said moneys, materials and services were used for the said business of conducting the said hotel as a going concern, which moneys, materials and services were necessary for the operation, taking care of, saving and preservation of the said hotel business, and was for the benefit of all parties interested in the said premises, and represented items of expense necessarily incurred by the said Receiver in operating and preserving the aforesaid property." No report of the trial proceeding appears here in this court and the evidence heard on the hearing before the Chancellor is not before this court.

(*First Nat. Bank v. 10 West Elm St. Bldg. Corp.*, 277 Ill. App. 337; *Eick v. Eick,* 277 Ill. App. 329.)

It was ordered on September 28, 1936, in both cases, that the claims of the petitioners, totaling $15,835 be allowed for payment by the receiver and that he issue certificates to the petitioners in the amounts due them, payable six months after date with interest at five per cent per annum, and that the certificates should constitute a lien on the premises and the rents thereof and any funds realized from the sale thereof, prior to the liens of all persons claiming any lien on the premises. The two cases were then consolidated for purposes of appeal from the two orders.

It is urged by the petitioners that the holders of the unmatured bonds and interest coupons are bound by the orders appointing the receiver and authorizing and empowering him to operate the hotel as above stated, under the doctrine of representation by the Cody Trust Company as trustee under the trust deed; that by reason of their representation, they have consented to the appointment of the receiver and his operation of the hotel under the order of the court.

In the case of *Farmers' Loan & Trust Co. v. Lake St. Elevated R. Co.,* 173 Ill. 439, it is stated: "It is true, as a general rule, that all parties interested in the subject matter of the suit should be made parties, and that, when foreclosure is sought of a mortgage or deed of trust, the cestuis que trustent, as well as the trustee should be made parties, but there are two well established exceptions to this rule. The first is, that, where the absent parties are properly represented, it is sufficient to make such representatives, parties to the suit." In *Hale v. Hale,* 146 Ill. 227, we said: (page 257) "Where it appears that a particular party, though not before the court in person, is so far represented by others that his interests receive actual and efficient protection, the decree may be held to be binding upon

him.'' Jones, on Corporate Bonds and Mortgages, says (sec. 398): "A trustee for bondholders represents their interests, they are made a party to a suit affecting their interests, and, when made a party to a suit affecting their interests, they are as much bound by the decree rendered in the suit as if they are individually made parties to the suit.

"Another exception to the rule is, that, where the beneficiaries are very numerous, so that the delay and expense of bringing them in becomes oppressive and burdensome, they will not be deemed necessary parties, where the trustee or trustees representing them are made parties.''

It is, therefore, pertinent in this case to inquire whether the holders of the unmatured bonds and interest coupons, as absent actual parties to the suit, were so far represented by the Cody Trust Company in the partial foreclosure suit that their interests received the actual and efficient protection of the court, when the receiver was appointed and the orders entered authorizing and empowering him to incur the expenses and obligation for borrowed money, as set forth in the petitions, necessary for the operation of the Hotel Clayton.

The complaint filed by the Cody Trust Company for partial foreclosure does not state that it is brought for or on behalf of the holders of the unmatured bonds and interest coupons. It is evident that the Cody Trust Company did not, under the acceleration clause of the trust deed, declare the unmatured bonds due and payable and institute the suit to secure a sale of the mortgaged premises for the payment of the bond issue. The sole purpose of the suit, so far as the chancellor was informed by the pleadings, was to fix the rights of the Cody Trust Company, individually, as the purchaser of the interest coupons which had matured on January 1, 1929, and July 1, 1929, and to

reimburse it, as trustee, for expenditures made by it, which the mortgagor, under the trust deed, was bound to make, and to recover compensation as trustee in possession, together with fees and costs of the foreclosure proceeding. All these demands by the complaint of the Cody Trust Company, and under the decree of sale secured by it, were expressly subordinated to the unmatured and outstanding bonds and interest coupons. At the time the receiver was appointed and the orders entered directing him to make expenditures for the operation of the hotel, and to borrow, if necessary, funds for that purpose, there was nothing in the pleading or procedure to invoke the action or the diligence of the chancellor to protect any rights of the holders of the unmatured bonds and interest coupons.

Under section 7, of Article IX of the trust deed, the joinder of the holders of the unmatured bonds and interest coupons as parties, was not necessary, in so far as the complaint of partial foreclosure seeks the fixing of the rights of the Cody Trust Company, individually, as the purchaser of the matured interest coupons. By subordinating its demands, as set forth in its complaint, to the unpaid bonds and coupons, the Cody Trust Company, trustee, was not attempting to enforce any adverse claims against the *cestuis que trust*. The rights and interests of the unmatured bonds and interest coupons under the allegations of the complaint, were passive. The interests of the Cody Trust Company and the bondholders under the complaint were not analogous, and the issue was not presented by the complaint that the interests of the bondholders, as first lien holders, was in any manner to be affected by subordination or otherwise by any proceeding or steps taken, or to be taken, in the partial foreclosure suit.

It is contended by the petitioners that as the partial foreclosure suit is brought in the name of the Cody

Trust Company "as trustee," the holders of the bonds are represented by the trustee and bound by the orders entered in the receivership matter. No interests of the bondholders are set forth in the complaint and their interests in the mortgaged premises are not represented by the Cody Trust Company, excepting in so far as the complaint states that the bondholders' rights are a first lien on the premises and superior to the demands of the Cody Trust Company. Every right the bondholders have in the premises is preserved to them by the complaint and the decree of partial foreclosure, and they were not necessary parties to such foreclosure suit. *Boyer v. Chandler,* 160 Ill. 394; *Northern Trust Co. v. Sanford,* 308 Ill. 381. The suit was brought to secure payment of demands of the Cody Trust Company, and not those of the bondholders. The court may look to the facts in the case to determine the interests of the parties to the suit. (*People v. General Electric R. Co.,* 172 Ill. 129.)

We are of the opinion that the pleadings, facts, and procedure herein, do not present a case where we are permitted to hold that the bondholders are bound as quasi parties by representation by the Cody Trust Company. (*Cross v. Will County Nat. Bank,* 177 Ill. 33.)

It is proposed by the petitioners that by the process of collecting the income, rents and profits of the premises by the receiver to pay the subordinated demands of the Cody Trust Company, the claims of the petitioners for services, materials, and money furnished for the operation of the hotel, are superior to the original lien of the trust deed in favor of the bondholders and their claims should be made a lien on the premises, by means of receiver's certificates, paramount to the lien of the bondholders.

As a general rule, the fixed legal right of a mortgagee cannot be impaired by any equities subsequently

arising against the objection of the mortgagee. In the case of *Kneeland v. American Loan & Trust Co.,* 136 U. S. 89, 34 L. Ed. 379, it was said: ''It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be a growing idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens.'' The general rule is not controlling in cases of railroad mortgages. A mortgagee of a railroad accepts the lien of his mortgage with the understanding and condition that the necessary expenses of the operation of the railroad by a receiver may by a court of equity, within prescribed limits, be given a preference as unsecured claims over the lien of his mortgage. It has been stated that this is the most extreme exercise of power ever ventured upon by a court of equity. High on Receivers, 4th ed., sec. 398.

In the case of *Fleming v. Anderson,* 220 Ill. App. 570, involving a receivership of a corporation manufacturing drain tile, this court said: ''It is urged by appellants that the court had no power to authorize the issuing of receiver's certificates for the purpose of improvements or carrying on the business without the consent of appellants.

''The object of appointing a receiver is to preserve the property for the benefit of all parties interested, and while the authority of a court to continue a business in the hands of a receiver, and to charge the expenses thereof on the corpus of the property, is rather an exception to a general rule than a rule itself; the court, in its discretion, has such right upon a proper showing being made. *Makeel v. Hotchkiss,* 190 Ill. 311; *Knickerbocker v. McKinley Coal & Mining Co.,* 172 Ill. 535; *Pittsburgh Plate Glass Co. v. Kransz,* 291 Ill. 84. Authorizing a receiver to issue receiver's cer-

tificates to carry on the business was formerly confined to receivers for railroads and semi-public corporations, but according to the later authorities, the power of a court to grant such authority to receivers of industrial corporations is conceded. *Pittsburgh Plate Glass Co. v. Kransz, supra.*

"In the exercise of this power the court should use great caution and it should only be exercised when it is made very clear to the court that it is for the best interest of all parties in interest, that the power be exercised.

"The court has no power to authorize the receiver of an industrial corporation to continue the business and to make receiver's certificates superior to prior liens, without the consent of the holders of such liens, unless it be apparently necessary to do so in order to preserve the corporate property or the franchises of the corporation."

In the case at bar, the effect and result of the orders making the receiver's certificates a first lien on the mortgaged premises is to compel the first lien holders to pay for the attempted collection or satisfaction of the subordinated or second lien of the Cody Trust Company. In any case, assuming that it is a valid exercise of jurisdiction by a court of equity, the question of making receiver's certificates a first lien superior to prior vested liens, is purely an equitable one, and to be determined upon just and equitable principles, as the circumstances of the case shall warrant. As pointed out in the case of *Fleming v. Anderson, supra,* it may be done in receiverships of industrial corporations when it is made very clear to the court that it is for the best interests of all parties that the power be exercised in order to preserve the corporate property or the franchise of the corporation. In the case of *Makeel v. Hotchkiss,* 190 Ill. 311, it is held that a receiver's expenses for running a hotel would not be

made a paramount lien upon the mortgaged hotel, superior to the rights of the holder of a master's deed under a foreclosure sale, who was not a party to the receivership suit, which involved only the equity of redemption. (*Thomsen v. Cullen,* 196 Wis. 581, 219 N. W. 439.) The bondholders were entitled to their day in court and to contest the validity of the order giving the receiver's certificates priority over the trust deed. (*Mercantile Trust Co. v. Tennessee Cent. R. Co.,* 291 Fed. 462; *Sibley County Bank of Henderson v. Crescent Milling Co.,* 161 Minn. 360, 201 N. W. 618.)

In the present case, the petitions for receiver's certificates allege that the money, materials, and services were furnished to operate the hotel and preserve the hotel business. The trust deed provides that any holder of the bonds accepts the same subject to the express understanding and agreement that every right of action, whether at law or in equity, upon or under the deed of trust is vested primarily in the trustee, and under no circumstances shall the holder of any bond or interest coupon have the right, alone or with other bondholders, to institute any action at law or any suit or proceeding in equity for the purpose of enforcing any payment, covenant, or remedy provided by the trust deed, nor to foreclose the deed of trust, unless the trustee shall, after 30 days, request in writing by holders of not less than twenty-five per cent in amount of the outstanding bonds, and upon having been tendered satisfactory indemnity, have refused to take the action requested or other appropriate action.

In the case of *Hanna v. State Trust Co.,* 70 Fed. 2, a junior mortgagee filed a bill for the foreclosure of its mortgage, secured the appointment of a receiver, and subsequently enjoined the senior mortgagees from commencing any suit for the foreclosure of their mortgages. Thereafter the receiver petitioned the court to issue certificates to operate the business of the mort-

gagor, and requested that the certificates be made a lien on the corpus, superior to the liens of the first mortgagees. The court came to the conclusion that the experiment of operating the business of the mortgagor by the receiver was to enhance the value of the mortgaged premises at the expense of the senior mortgagees. The court there says: ''The effect of the proceeding was to burden the prior mortgagee with the whole cost of the expenditures and experiments made for the betterment of the property on the petition, and for the benefit of the insolvent corporation and the junior mortgagee.'' The reasons for reaching this conclusion by the United States Circuit Court of Appeals are stated in its opinion, many of which are applicable to cases where junior mortgagees request that receiver's certificates, issued by a receiver appointed on its behalf, may be made a prior lien to pre-existing first liens.

In this case, as the partial foreclosure suit expressly continued the first lien of the bondholders as superior to the demands of the Cody Trust Company set up in its complaint for partial foreclosure, it cannot be said that the bondholders acquiesced in the appointment of the receiver and his operation of the hotel.

It is our opinion that in this case, no clear and convincing equitable grounds, or reasons, have been presented, which should cause us to depart from the general rule that existing vested legal liens should not be displaced by the subsequent claims of the petitioners.

The decree of the circuit court of Lake county, is hereby reversed and the cause remanded.

*Reversed and remanded.*