The W. W. Brown Construction Company, Appellant, *vs.* The Central Illinois Construction Company *et al.* Appellees.

*Opinion filed April 23, 1908—Rehearing denied June 5, 1908.*

Railroads—*when a sub-contractor on construction work is not entitled to a lien upon railroad property.* A provision in the construction work contract between the original contractor and the railway company, that the completed work shall be delivered "free from any and all liens, claims or encumbrances of any description," amounts to an agreement that there shall be no lien, and includes any inchoate or incipient lien which exists before the notice or claim is filed as well as liens upon which notices have been filed, and hence neither the original contractor, nor any sub-contractor under him, can assert any lien upon the railroad property. (*Von-Platen* v. *Winterbotham,* 203 Ill. 198, followed.)

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Montgomery county; the Hon. S. L. Dwight, Judge, presiding.

On December 29, 1905, the W. W. Brown Construction Company, the appellant, filed its bill in the circuit court of Montgomery county against the Central Illinois Construction Company, the St. Louis and Northeastern Railway

Company, (appellees,) and the Equitable Trust Company, to enforce a sub-contractor's lien against the property of the railway company, under paragraph 8 of chapter 82, Hurd's Revised Statutes of 1905. The Central Illinois Construction Company was the original contractor. An answer and replication were filed, and upon a hearing the court entered a decree finding the sum of $21,518, with interest thereon from November 15, 1905, to be due appellant from the original contractor, awarding appellant a lien for that amount upon the property of the railway company and dismissing the bill as to the last named defendant. The Appellate Court for the Third District reversed that decree, holding that appellant was not entitled to a lien, and remanded the cause, with directions to dismiss the bill. From that judgment this appeal is prosecuted.

On March 8, 1905, the St. Louis and Northeastern Railway Company entered into a written contract with the Central Illinois Construction Company to construct and equip, ready for operation, a line of electric railway from Hillsboro, Illinois, to Madison and Venice, Illinois, a distance of fifty-seven miles. The lien sought to be foreclosed was for work done in excavating and grading the portion of the right of way between the cities of Hillsboro and Litchfield by appellant under a written contract between appellant and the original contractor. This contract provides, among other things, that appellant shall be paid for excavating as follows: For all earthwork twenty cents per cubic yard; for loose rock excavation forty cents per cubic yard; for solid rock excavation ninety-five cents per cubic yard; and that the material shall be classified as solid rock, loose rock and earth. By the contract the chief engineer of appellee construction company was appointed umpire, with power to determine the amount to become due under the contract, his decision to have the effect of an award and to be final and binding upon the parties. Payments were made from time to time as the work progressed. When it was completed

the engineer made a final estimate of the amount due. Appellant contends that this estimate or finding is not binding upon the parties for various reasons, and that the amount actually due it was much greater than the sum so fixed. According to that finding there was still due to appellant the sum of $8965.52, and this was tendered to it by the construction company. The difference ($12,552.48) between that amount and the principal sum for which a lien was decreed is the money here in controversy. Appellant claims that the engineer classified a large quantity of material as "earth" which should have been classified as "loose rock," and that the amount allowed by the engineer for excavating that material is therefore twenty cents per cubic yard less than it should be. The sum in dispute is ascertained by figuring the additional twenty cents per cubic yard upon that quantity of material. The engineer's estimate of the total yardage excavated is not questioned by appellant. The disagreement pertains solely to the classification of the material moved.

Appellees contend (1) that appellant has no lien; and (2) that no more is due to it than the sum tendered. Appellant assigns as error the action of the Appellate Court in failing to affirm the decree of the circuit court.

THOMAS E. DEMPCY, and JETT & KINDER, for appellant.

TERRY & GUELTIG, (J. H. ATTERBURY, of counsel,) for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The initial question in this litigation is whether the appellant has a lien by virtue of paragraph 8 of chapter 82, Hurd's Revised Statutes of 1905, which reads as follows: "Every person who shall hereafter, as sub-contractor, ma-

terial-man, or laborer, furnish to any contractor with any such railroad corporation any fuel, ties, materials, supplies, or any other article or thing, or who shall do and perform any work or labor for such contractor in conformity with any terms of any contract, express or implied, which such contractor may have made with any such railroad corporation, shall have a lien upon all the property, real, personal and mixed, of said railroad corporation: *Provided,* such sub-contractor, material-man or laborer shall have complied with the provisions of this act; but the aggregate of all liens hereby authorized shall not, in any case, exceed the price agreed upon in the original contract to be paid by such corporation to the original contractor: *And, provided, further,* that no such lien shall take priority over any existing lien."

Appellant was a sub-contractor under the Central Illinois Construction Company. The contract between the construction company and the railway company required that the construction company should complete and equip, ready for operation, the entire proposed line of railway, and in that agreement is found this provision: "The completed work, when offered to the company for acceptance, shall be delivered free from any and all liens, claims or encumbrances of any description, other than the lien of the mortgage which the company proposes to place upon it as aforesaid." The word "company" as here used designated the corporation that owned the railway.

In *VonPlaten* v. *Winterbotham,* 203 Ill. 198, which was a suit to enforce a mechanic's lien, this court said (p. 204): "It is not to be presumed that the legislature intended to restrict or abridge the right of contract which the owner has and to give a lien to a sub-contractor, where the terms of the only contract to which the owner is a party are such that no lien can arise, or in spite of an agreement that there shall be no lien. * * * No reason is apparent why sub-contractors should be permitted to establish secret liens against property, not authorized under the original contract

or in violation of its terms." The reasoning which led to that conclusion in a suit under the Mechanic's Lien act seems equally applicable to this proceeding brought under the act in reference to liens upon railroads. (See, also, *Williams* v. *Rittenhouse & Embree Co.* 198 Ill. 602.)

In *Schroeder* v. *Galland,* 134 Pa. St. 277, the original contract provided that the building, when completed, should be delivered to the owner "free of all liens and encumbrances, or any claims whatever that might arise under any action of the party of the second part, or his legal representatives, under this contract." The sub-contractor sought to enforce a lien for money due him from the original contractor. The court held that he could not enforce a lien upon a building which the principal contractor had agreed to build and deliver free of all liens, as the sub-contractor was bound by the original contract and presumed to have notice of the terms thereof. To the same effect are *Shaver* v. *Murdock,* 36 Cal. 298, and *Henley* v. *Wadsworth,* 38 id. 356.

In *Murphy* v. *Morton,* 139 Pa. St. 345, *Evans* v. *Grogan,* 153 id. 121, *Nice* v. *Walker,* id. 123, and *Schmid* v. *Improvement Co.* 162 id. 211, it was said that the holding upon the controlling question in *Schroeder* v. *Galland, supra,* was to the effect that when the agreement between the owner and contractor contains an express covenant not to file a lien, or where such covenant appears by necessary implication, neither the contractor nor his sub-contractor is entitled to file a lien. It is insisted that in the light of these later cases the earlier case can no longer be regarded as authority upon the proper construction to be given the words in the contract there before the court, and that *Nice* v. *Walker, supra,* rather than the *Schroeder case,* should be followed. The *Nice case* added to the rule announced in the *Schroeder case* the qualification that the implied covenant not to file a lien must "so clearly appear that the mechanic or material-man can understand it without consulting

234—26

a lawyer as to its legal effect." It is apparent from *Von-Platen* v. *Winterbotham, supra,* that the law is not so in this State, but that the right of the sub-contractor to enforce a lien is barred whenever the contract entered into by the owner contains "an agreement that there shall be no lien." We think that if the contract, when properly construed, is found to contain such an agreement, it is binding upon the sub-contractor, whether or not he requires the assistance of a lawyer to understand its provisions.

Appellant states that the holding of the Appellate Court "is clearly in accord with reason and the authorities," and it is suggested by that court that the language above quoted from the original contract in the case at bar is not sufficiently precise and definite in its terms to constitute a waiver of the statutory right to enforce the lien. It is said that the provision would be complied with if, upon the delivery of the work, no lien had been asserted; that in the event of the failure of the railway company, after acceptance, to pay for the work according to the terms of the contract there is no inhibition against the assertion or enforcement of a lien to secure the payment of the amount remaining due under the contract. We think this argument fails to give due consideration to the nature of the lien. The reasoning, apparently, is based on the theory that there is no lien, under the statute, in a case where it may properly attach, until the person claiming the lien has given the notice required by section 9 of chapter 82, *supra,* or taken some other affirmative action to enforce the same. In proper case the lien exists whether notice is given or not. The proviso in section 9, that the lien shall not attach unless notice shall have been served or filed, "simply means that the incipient or inchoate lien of the sub-contractor will cease,—not 'attach' to the property in the sense of becoming a fixed lien thereon,"—if the notice prescribed by the statute be not given. (*St. Louis and Peoria Railroad Co.* v. *Kerr,* 153 Ill. 182.) As is said in that case, any other construction

of the statute would render it inoperative, because it would make the statutory lien subject to any other lien placed upon the property, or any conveyance thereof made, after the beginning of the work and before the notice was served or filed. The contract here provided that the property should be delivered free from any and all liens, claims or encumbrances, of any description, and we think the terms included the inchoate. or incipient lien which exists before a notice is given or filed and before any attempt is made to assert the statutory right. If the work was delivered free from liens of that character then no lien could be asserted and enforced by appellant, in this instance, after the completed work had been offered to and accepted by the railway company. The language above quoted from the original contract in this case amounts to "an agreement that there shall be no lien," and as the original contract, upon which the right of the sub-contractor depends, contains this provision the sub-contractor has no lien. The fountain cannot rise above its head.

The contract between the original contractor and the sub-contractor provides, among other things, as follows:

"*Liens.*—Before final settlement is made between the parties hereto for work done and material furnished under this contract, and before any right of action shall accrue to the contractor against said company therefor, the said contractor shall furnish evidence satisfactory to the chief engineer of the company that the work covered by this contract is free and clear from all liens for labor and materials and that no claim then exists against the same for which any lien could be enforced."

That is followed by provisions in reference to final estimates, the release of claims of the sub-contractor against the contractor, appointment of the umpire, powers of assistant engineers, and then follows this language: "It is finally covenanted and agreed by and between the parties hereto, for themselves, their sub-contractors, executors, administra-

tors, successors and assigns, that this contract, and all of its terms and provisions, shall be binding upon them, and each and every one of them, and that the work covered by this contract, and all money due thereunder, shall be free from and not liable to any lien or charge at law or in equity, or under the mechanic's lien act of any State, territory or county."

We think these provisions just quoted very strongly indicate that the understanding between the original contractor and the sub-contractor was that the latter would not have a lien for any moneys due it on account of the performance of the sub-contract. It is unnecessary, however, to decide whether these provisions of the sub-contract would, of themselves, bar the right to a lien.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*