(No. 12767.—Reversed and remanded.)

THE PITTSBURGH PLATE GLASS COMPANY *et al.* Defendants in Error, *vs.* HENRY P. KRANSZ *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1919—Rehearing denied Feb. 4, 1920.*

1. MECHANICS' LIENS—*when Supreme Court has jurisdiction although liens do not exceed $1000.* In a proceeding for the appointment of a receiver to settle mechanics' liens, although neither of the liens decreed exceeds $1000, the Supreme Court has jurisdiction, where the decree fixes the priority of the liens over certain trust deeds given to secure a building loan and decrees the foreclosure of the trust deeds.

2. SAME—*liens of sub-contractors are created by statute.* Although the liens of sub-contractors exist by virtue of contracts between the owners and the original contractors which contain no provisions against liens, the liens themselves are created by statute.

3. SAME—*bankruptcy of original contractors does not defeat liens of sub-contractors.* Where sub-contractors have given notice of their liens within the time required by statute the liens are not defeated by the bankruptcy of the original contractors before the giving of the notices, as such liens exist from the date of the original contract and not from the date of the notice, though notice must be given to complete or preserve the lien.

4. SAME—*court may appoint receiver to complete building and make trust deed a first lien.* In a proceeding for the settlement of mechanics' liens where the building has not been completed, the court may appoint a receiver with power to borrow money to complete the building if it is for the best interests of all parties and to give a trust deed which shall be a first lien; and where such order is entered the court cannot, after hearing the master's report and after the money has been borrowed, make said trust deed subject to the mechanics' liens.

5. MORTGAGES—*when a failure of consideration may be set up against assignee of trust deed.* A person buying a mortgage takes it subject to all the infirmities to which it is liable in the hands of the mortgagee, and where a trust deed is given to one of the contractors to secure a building loan to complete the building, the abandonment of the work by the contractor is a failure of consideration, which may be set up in equity against the foreclosure of the trust deed by an assignee thereof.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

VINCENT D. WYMAN, HARRY C. KINNE, CHARLES E. CARPENTER, and CHARLES C. BODENSTAB, for plaintiffs in error.

GUSTAV E. BEERLY, G. A. BURESH, ALBERT N. CHARLES, and REUEL H. GRUNEWALD, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This case comes to this court on petition for *certiorari* to review a judgment of the Appellate Court for the First District affirming a decree of the circuit court.

Rudolph J. Boss and Margaret, his wife, owned two lots in the city of Chicago, and on January 15, 1916, executed to Henry P. Kransz notes and a trust deed for the purpose of procuring what is called a building loan of $7500 to erect a building upon one of the lots. On March 16, 1916, they entered into a written contract with Huberty & Loheinrich, co-partners and contractors, for the erection of a building on lot 8 for the sum of $10,500. Huberty & Loheinrich made contracts with the Pittsburgh Plate Glass Company, Fred J. Bohn, the Kemler Lumber Company and Edward Henry for labor and material in the construction of the building. The last dates for performance of the sub-contracts were: The Pittsburgh Plate Glass Company June 23, Edward Henry July 7, Fred J. Bohn July 18, and the Kemler Lumber Company June 30.

The sub-contracts were completed and statutory notices for claims for liens given by the sub-contractors on August 14, July 15, September 14 and July 13, respectively. April 12, 1916, the owners·of the property executed other notes in the sum of $2200, and secured them by a trust deed on the property, to Mathias Huberty, trustee. The trust deed to Henry P. Kransz of January 15, 1916, was recorded April 18, ·1916, and the trust deed of April 12, 1916, to Mathias Huberty was recorded May 4, 1916. The first money advanced on the ·Kransz loan was $88.40 on April 21, 1916, and $2197.55 on May 3. Huberty & Loheinrich failed to complete the building and were adjudged bankrupts July 12, 1916. On October 18, 1916, the Pittsburgh Plate Glass Company filed its bill in the circuit court of Cook county to enforce its lien for $84.75 against the property. The owners of the property, the contractors, Henry P. Kransz, the unknown owners of the notes secured by the trust. deeds of January 15 .and April 12, 1916, and the unknown claimants of or to said property were made defendants. The Kemler Lumber Company filed an intervening petition claiming a lien for $1100. Edward Henry filed an intervening petition claiming a lien for $670. Fred J. Bohn filed an intervening petition claiming a lien for $816.58. All these amounts were alleged to be for labor ·and material furnished in the construction of the building.

·Henry P. Kransz answered the bill, alleging he owned the notes, amounting to $7500, secured by trust deed executed by the owners of the. property, and that the same was a first lien on the property and prior to any rights or interests of the lien claimants. He also filed a cross-bill to foreclose his trust deed. In his cross-bill he alleged his trust deed was a first lien on the property; that on July 12, 1916, and previous to the service of notice of liens by the lien claimants, Huberty & Loheinrich had been adjudged bankrupts in the district court for the northern district of Illinois; that the building had been abandoned by them;

that it was uncompleted, untenantable and exposed to the elements. The cross-bill alleged it would cost $3500 to complete the building, and that unless a receiver was appointed with power to secure a loan and make it a first lien on the premises for the purpose of completing the building it would become practically worthless. In an amendment to the cross-bill it was alleged the building in its then condition was worth about $8000; that mechanics' lien claims had been filed amounting to $4000; that Walter M. Inman claimed a second mortgage of $2200; that the value of the building when completed would be approximately $12,500, and that the owners of it were insolvent. Inman and the Lincoln Mill Company were made additional parties defendant. Inman filed an answer claiming he owned notes amounting to $2200, executed April 12, 1916, secured by a trust deed of the same date to Mathias Huberty upon the property and recorded May 4, 1916. He also filed a cross-bill to foreclose the trust deed. The lien claimants above mentioned answered the cross-bills, denying priority of the trust deeds over the liens of the respective claimants. Rudolph J. Boss and his wife answered the Inman cross-bill, denying his trust deed was a lien, and alleging that there was no consideration for the notes purporting to be secured by it.

December 15, 1916, on motion of the cross-complainant Henry P. Kransz the circuit court entered an order appointing John L. Lukanitsch receiver, with power to take possession of the premises, complete the building, borrow money for that purpose and secure the same by receiver's certificates secured by a mortgage on the premises, which should be a first lien on the property and prior to the liens of all of the parties to said causes. The receiver qualified, borrowed $4200 to complete the building from Peter P. Kransz, executed a receiver's certificate for that sum, due in three years, and executed a receiver's trust deed. The contractors received $6000 of the Henry P. Kransz loan and Boss paid

them $800 in cash.   These payments were made without regard to the protection of the liens of sub-contractors.

The cause was referred to a master in chancery to take the testimony and report his conclusions.   The master reported that the defendants in error furnished labor and material in the construction of the building pursuant to contracts with the general contractors during May and June, 1916, as follows:   The Kemler Lumber Company $913.87, Fred J. Bohn $816.58, Edward Henry $670, and the Pittsburgh Plate Glass Company $84.75, all of which sums were due and unpaid; that said parties had mechanics' liens of equal validity, which were first liens upon the property, and that said liens attached as of March 15, 1916. The master reported his conclusions as to the priority of the parties, and the chancellor, after overruling exceptions to the master's report, entered a decree finding that the amounts due defendants in error were first and prior liens; that the amount represented by the receiver's certificates and trust deed was a second lien; that Henry P. Kransz had a third lien and Walter M. Inman had a fourth lien on the lot and improvements.   The property was directed to be sold and the proceeds of the sale distributed to the parties according to their rights as found and decreed.   From that decree Henry P. Kransz, personally and as trustee, Rudolph J. Boss and Margaret, his wife, jointly and severally, prayed and were allowed an appeal to the Appellate Court.   That court affirmed the decree of the circuit court, and Henry P. Kransz, Peter P. Kransz and Rudolph and Margaret Boss filed a petition in this court for a writ of *certiorari.*

The jurisdiction of this court to review the judgment is questioned on the ground that none of the sums decreed due the defendants in error, respectively, exceeded $1000. While the question is not free from doubt, we are disposed to hold we have jurisdiction in view of the fact that the litigation and decree fixed the priority of the claims of Peter P. Kransz, Henry P. Kransz and Walter M. Inman

and decreed the foreclosure of the Henry P. Kransz and Inman trust deeds. They prayed foreclosure of their trust deeds and claimed they were prior to the liens of defendants in error.

The statutory notices of the liens of the defendants in error were not given until after the original contractors were adjudicated bankrupts, July 12, 1916, and it is contended for that reason the adjudication in bankruptcy defeated the liens of defendants in error. The present lien statute, which governs this case, provides (paragraph 35) that a sub-contractor, unless it is provided otherwise in the contract between the owner and original contractor, shall have a lien "from the same time, on the same property as provided for the contractor, and, also, as against the creditors and assignees, and personal and legal representatives of the contractor." The sub-contractors' liens existed by virtue of the contract between the owners and the original contractors, which contained no provision against liens, but the lien itself was created by statute. *VonPlaten* v. *Winterbotham,* 203 Ill. 198; *Kelly* v. *Johnson,* 251 id. 135.

Some confusion has arisen as to when the lien arises and whether it exists before the statutory notice is given. That question received the consideration of this court in *Brown Construction Co.* v. *Central Illinois Construction Co.* 234 Ill. 397. It was there said: "In proper case the lien exists whether notice is given or not. The proviso in section 9 that the lien shall not attach unless notice shall have been served or filed, 'simply means that the incipient or inchoate lien of the sub-contractor will cease,—not 'attach' to the property in the sense of becoming a fixed lien thereon,'—if the notice prescribed by the statute be not given. (*St. Louis and Peoria Railroad Co.* v. *Kerr,* 153 Ill. 182.) As is said in that case, any other construction of the statute would render it inoperative, because it would make the statutory lien subject to any other lien placed upon the property, or any conveyance thereof made, after the beginning

of the work and before the notice was served or filed."
(See, also, *Boyer* v. *Keller,* 258 Ill. 106; *Rittenhouse &
Embree Co.* v. *Warren Construction Co.* 264 id. 619.) The
lien given by the statute exists from the date of the original
contract, but notice of the claim of lien must be given with-
in the time required by statute to preserve and enforce it.
The liens of defendants in error were not defeated by the
original contractors being adjudged bankrupts. .1 Loveland
on Bankruptcy, 495, 496; *Paddock* v. *Stout,* 121 Ill. 571.

. The decree correctly found that the liens of defendants
in error which attached March 15, 1916, were prior to the
liens claimed by Henry P. Kransz and Inman by virtue of
the trust deeds. The Kransz trust deed was not recorded
until April 19, 1916, and the first money advanced there-
under was $88.40 on April 21, 1916. The trust deed to
Huberty, now held by Inman, is dated April 12, 1916, and
was not recorded until May 4. It is not disputed that
the notes given by Boss and secured by the trust deed to
Huberty were for the balance of the contract price for com-
pleting the building. Seven thousand five hundred dollars
were to be paid from the Henry P. Kransz loan, leaving a
balance of $3000. Boss testified, and is not contradicted,
that about the time he gave the notes for $2200, and the
trust deed to secure them, he had a talk with Huberty; that
Huberty requested him to secure the balance of the contract
price by notes secured by second mortgage on the property
and they would complete the building; that he (Boss) paid
the contractors $800 cash, executed the notes for $2200,
secured by the trust deed, and delivered them to Huberty.
The consideration for the notes was the completion of the
building by Huberty & Loheinrich. They never performed
their agreement but abandoned the work after receiving
from the Henry P. Kransz loan a little over $6000 and
from Boss $800. The consideration for the notes there-
fore failed. The notes were negotiable instruments, and
Inman appears to have purchased them in good faith with-

out notice of any defense Boss might have to them. The trust deed, however, was not assignable by the statute or the common law. A person buying a mortgage takes it subject to all the infirmities to which it is liable in the hands of the mortgagee, and in equity the mortgagor is entitled to every defense against the assignee which he could have made against the mortgagee himself. (*Olds* v. *Cummings,* 31 Ill. 188; *Chicago Title and Trust Co.* v. *Aff,* 183 id. 91; *Schultz* v. *Sroelowitz,* 191 id. 249; *McAuliffe* v. *Reuter,* 166 id. 491.) Inman testified he made no inquiry of anyone before buying as to what the notes were given for; that he understood Boss was erecting a building and that the money he paid for the notes was to be put into the building. It seems clear that the consideration for the notes having failed, Boss would have a defense in equity against the foreclosure of the trust deed by Huberty & Loheinrich, and under the authorities above referred to and many others found in our Reports he could interpose that defense against Inman. We are of the opinion the circuit court and Appellate Court erred in holding the trust deed held by Inman was a lien and enforceable.

Inman has filed no brief in this court nor did he file one in the Appellate Court. The decree gave him a lien subject to the liens of defendants in error, Peter P. Kransz and Henry P. Kransz, and as a question of practical benefit it is probably of little importance to the parties whether Inman's trust deed is held to be a lien or not. But Boss resisted it in the circuit court and in the Appellate Court, and is contending in this court that the consideration for the notes secured by the trust deed having failed, the trust deed cannot in equity be held a lien and enforceable, and he presents the question properly for our decision.

It is insisted by plaintiffs in error that the decree making the trust deed to Peter P. Kransz to secure the receiver's certificates a second lien and subject to the liens of defendants in error was erroneous, and that said trust deed

should have been decreed to be a first lien. Peter P. Kransz was not made a party to the litigation in the circuit court and was not a party to the appeal to the Appellate Court but filed a brief in that court. The Appellate Court said his right to be heard on the question was doubtful but considered and passed on his claim, affirming the decree of the circuit court giving him a lien subject to the liens of defendants in error. He joined in the petition to this court for the writ of *certiorari,* which was allowed, and we will consider his claim for a first lien on the property.

Henry P. Kransz asked the appointment of a receiver with power to borrow money to complete the building on receiver's certificates secured by a trust deed on the property which should be a first lien thereon. Defendants in error objected but the court entered an order to that effect. Henry P. Kransz, as we understand, is not complaining that the trust deed securing the receiver's certificates was adjudged a prior lien to his trust deed, but he unites with Peter P. Kransz in insisting the trust deed given to secure the receiver's certificates should have been given priority over all other liens.

Section 12 of the Lien act authorizes the court to appoint a receiver for property on which liens are sought to be enforced, in the same manner and for the same causes and purposes as in cases of foreclosure of mortgages as well as to complete any unfinished building when it is deemed to be for the best interests of all the parties interested, and it is contended the power is implied to make the appointment effective by making the receiver's certificates a first lien in such cases as this. The authorities are not altogether in harmony but the weight of them is that ordinarily the rule on this subject, while universally recognized and applied to railroads and public service corporations, will be exercised in cases of individuals and private corporations with great caution, but that when circumstances seem to warrant, the same rule will be applied in cases of private

persons and corporations. By the showing made on the application for the appointment of the receiver there was due on the Henry P. Kransz trust deed and notes about $8000 besides the liens of defendants in error, aggregating more than $2000; that the building was without doors and windows and the floors had not been laid; that the owners were unable to complete the same; that it would require at least $3500 to complete the building; that unless it was completed it would greatly deteriorate in value, and it was represented to be for the best interests of all the parties claiming liens, as well as for the best interests of the owners, that a receiver be appointed with power to borrow money to complete the building, issue receiver's certificates therefor and secure them by a trust deed, which should be a first lien on the premises. The court entered an order accordingly. John L. Lukanitsch was appointed receiver and borrowed $4200 from Peter P. Kransz, for which he gave receiver's certificates secured by trust deed. It is true, defendants in error objected to the order, but they did not prosecute an appeal from it and the order was never reversed or set aside. The court had jurisdiction of the subject matter and of the parties, and its order was a valid, binding order unless reversed or set aside and is not subject to collateral attack. Under and by virtue of the order the receiver borrowed the money and expended it in the completion of the building, which must have been known to defendants in error. Their right now to be heard in opposition to that order and decree is, to say the least, doubtful. (*Humphreys* v. *Allen,* 101 Ill. 490.) Presumably the court was of opinion the order was for the best interests of all the parties interested, and we are of opinion the order is controlling in determining the priority of liens, and the circuit and Appellate Courts erred in holding otherwise.

It cannot be said from this record that the order was even erroneous. In *Knickerbocker* v. *McKindley Coal Co.*

172 Ill. 535, the court quoted with approval from *Beckwith v. Carroll*, 56 Ala. 12: "When it becomes the duty of a court of equity to take property under its own charge through a receiver, the property becomes chargeable with the necessary expenses incurred in taking care of and saving it, including the allowance to the receiver for his services. He is the officer and agent of the court and not of the parties, and it is a right of the court, essential to its own efficiency in the protection of things so situated, to keep them under its control until such expenses and allowances are paid or secured to be paid." The court also quoted High on Receivers to the same effect. This court in the *Knickerbocker case* said, in substance, the object of appointing a receiver is to preserve the property for the benefit of all interested, which sometimes requires continuing a business; and it was further said the court had the right, which should be exercised with great caution, to make the expense of the business chargeable upon the *corpus* of the property when the income was not sufficient to pay it. The court further said such powers were ordinarily exercised in cases of railroad companies, yet the same rules apply in other cases under like circumstances. This is sustained also in *Makeel v. Hotchkiss*, 190 Ill. 311, and *Town of Vandalia v. St. Louis, Vandalia and Terre Haute Railroad Co.* 209 id. 73. The property here involved was untenantable and producing no income. The court determined it was for the best interests of all parties that it be completed. The owners were unable to complete it, and that could only be done through the appointment of a receiver with power to complete the building, and he could only do that by borrowing money for that purpose.

Under the facts and circumstances of this case we are of opinion the trust deed of Peter P. Kransz securing the receiver's certificates should have been made a first lien and the claims of defendants in error should have been made second liens.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court, with directions to enter a decree in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*