2020 IL App (2d) 200193
No. 2-20-0193
Opinion filed June 29, 2020

IN THE
APPELLATE COURT OF ILLINOIS
SECOND DISTRICT

| | |
|---|---|
| REEF-PCG, LLC, | ) Appeal from the Circuit Court |
| | )   of Du Page County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 19-CH-1327 |
| | ) |
| 747 PROPERTIES, LLC; | ) |
| R.G. CONSTRUCTION SERVICES, INC.; | ) |
| GRAYBAR ELECTRIC COMPANY, INC.; | ) |
| VADER NATIONAL ELECTRIC LLC; | ) |
| PROFESSIONAL DECORATING & | ) |
| PAINTING, INC.; HILL FIRE PROTECTION | ) |
| LLC; KINGSTON TILE COMPANY, LTD; | ) |
| AVI SYSTEMS, INC.; IMBERT | ) |
| INTERNATIONAL INC.; AIR COMFORT | ) |
| CORPORATION; and UNKNOWN | ) |
| OWNERS and NONRECORD CLAIMANTS, | ) |
| | ) |
| Defendants | ) |
| | ) |
| (Vader National Electric, LLC, and Hill Fire | ) |
| Protection, LLC, Defendants and | ) |
| Counterplaintiffs-Appellants; Imbert | ) |
| International, Defendant and Counterplaintiff; | ) |
| Hill Mechanical Corporation, Intervenor and | ) |
| Counterplaintiff-Appellant; Clune Construction | ) |
| Company, L.P., Intervenor and | ) |
| Counterdefendant-Appellee; Air Comfort | ) |
| Corporation, Defendant-Appellee; Gregory S. | ) Honorable |
| Gann, Receiver-Appellee; and Applied | ) Bonnie Wheaton, |
| Controls, Inc., Intervenor-Appellee). | ) Judge, Presiding |

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1 Mechanic's lienholders, Vader National Electric, LLC (Vader); Hill Fire Protection, LLC (Hill Fire Protection); and Hill Mechanical Corporation (Hill Mechanical) (lienholders), appeal from the trial court's order subordinating their liens to $12 million in new debt, to be issued through receiver certificates, for improvements to secure a 10-year lease with the General Services Administration of the United States government (GSA). For the following reasons, we reverse.

¶ 2                                          I. BACKGROUND

¶ 3 In October 2018, 747 Properties, LLC (747 Properties), borrowed approximately $16.9 million from a syndicate of individuals and corporations, including PCG Credit Partners LLC (PCG), who named REEF-PCG, LLC (REEF-PCG), as the agent. The purpose of the loan was to buy and remodel the four-story office building located at 747 E. 22nd Street in Lombard, IL (747 property). The loan is secured by a mortgage on the property. Thereafter, 747 Properties entered into lease agreements with Pomeroy IT Sales (Pomeroy) for the first two floors and with the GSA for the third and fourth floors.

¶ 4 Pomeroy hired Clune Construction Company, L.P. (Clune Construction), to complete approximately $15 million in repairs to both its leased space and the common elements of the building. Clune Construction in turn hired numerous subcontractors to perform the work, including Vader, Hill Fire Protection, Hill Mechanical, and Imbert International (Imbert). Pomeroy allegedly breached its lease and defaulted on its payments to Clune Construction and the subcontractors, resulting in $15 million in mechanic's liens on the 747 property, filed by Clune Construction and the subcontractors.

¶ 5  The third and fourth floors of the 747 property, leased by the GSA, are currently vacant.  The lease is for 10 years and contains the following terms. It obligates 747 properties to make $8.5

million in tenant improvement repairs (buildout), the specifics of which are detailed in the lease. The buildout costs will be repaid by the GSA over 10 years at a 6% interest rate. Additionally, the GSA will pay "Building specific Amortization Costs" of $1.6 million over 10 years. Finally, the GSA will pay additional rent and operating costs, totaling approximately $1.4 to $1.6 million per year over the 10-year lease.

¶ 6 On November 22, 2019, REEF-PCG filed a mortgage foreclosure action against 747 Properties, concerning the 747 Property. REEF-PCG also sued the mechanic's-lien claimants, including Vader, Hill Fire Protection, Hill Mechanical, Imbert, and Clune Construction, as additional defendants and necessary parties. The foreclosure suit claimed that 747 Properties was in breach for failing to pay amounts due under the mortgage agreement and allowing mechanic's liens to be placed on the property. The mechanic's liens totaled approximately $15 million. REEF- PCG sought accelerated repayment of all amounts due under the loan, totaling $17 million including interest and fees. REEF-PCG also sought the appointment of a receiver, to which 747 Properties had consented in the loan documents, in the event of default.

¶ 7 On January 3, 2020, upon REEF-PCG's motion, the trial court appointed Gregory Gann as the receiver and indicated that the receiver would have "all duties, responsibilities and powers enumerated as a receiver in the Illinois Foreclosure Law." See 735 ILCS 5/15-1101 *et seq.* (West 2018) (Illinois Mortgage Foreclosure Law). On January 22, 2020, REEF-PCG and Gann (jointly referred to as the Receiver for purposes of this appeal) filed a joint motion for receiver certificates. Essentially, the Receiver asked the court to approve receiver certificates in the amount of $12 million to build out lease space and make general improvements for a future tenant. To make this feasible from a lending standpoint, the Receiver's motion requested that the loans under the

receiver certificates receive priority over all other incumbrances, including the previously filed mechanic's liens.

¶ 8    In support, the Receiver's motion stated that, in October 2018, 747 Properties entered into a 10-year lease agreement with the GSA to rent the third and fourth floors of the 747 property. Under the GSA lease, 747 Properties is required to perform the buildout for $8.5 million, to be amortized back through the 10-year lease. The Receiver alleged that 747 Properties had no funds to complete the buildout but that doing so, to secure GSA as a tenant, would result in the "highest potential value" for the property. The Receiver alleged that, if $10 million in additional funds (the $8.5 million plus at least $1.5 million in additional costs) are not obtained the property will be "underwater." The Receiver's motion alleged that PCG was willing to loan the additional *$12* million at *12%* interest to ensure this "highest potential use" but that PCG demanded priority above all other incumbrances in order to make the loan.

¶ 9 The trial court ordered that any written responses objecting to the Receiver's motion be filed by February 10, 2020, and it set oral argument on the motion for February 13, 2020. On February 10, 2020, Vader filed a brief in opposition to the Receiver's motion, arguing, *inter alia*, that granting the motion would violate section 16 of the Mechanics Lien Act (770 ILCS 60/16 (West 2018)), that there was insufficient evidence in support of the motion to meet the common- law standard for reprioritizing the liens, and that the motion was not supported by the equities. Hill Fire Protection and Hill Mechanical also filed briefs in opposition. Imbert did not file a brief but argued against the Receiver's motion at the hearing. Clune Construction also filed a response brief but did not object to the issuance of the receiver certificates; rather, it sought assurances that the receiver certificates would benefit all the parties to the underlying action, especially the

lienholders. Vader, Hill Fire Protection, Hill Mechanical, and Imbert also answered and filed counterclaims.

¶ 10 On February 13, 2020, the trial court entertained a relatively brief argument on the Receiver's motion, and we summarize the arguments of the parties as follows.

¶ 11 The Receiver and those parties arguing in favor of its motion contended that the court had the equitable power to reprioritize the liens, giving the monies advanced pursuant to the receiver certificates first priority. They argued that no lender would provide the additional $12 million needed for the buildout unless given a first-lien position through the receiver certificates. With the GSA as the tenant for the third and fourth floors, $28 million would be received over 10 years, which includes repayment for the buildout at 6% interest. Moreover, Clune Construction's counsel mentioned tentative and incomplete appraisals purportedly suggesting that the building is worth $5 to $6 million as an empty shell but might be worth $19 to $20 million with GSA as a tenant and in the middle of the $20-million range with an additional tenant. Counsel for REEF-PCG argued that the value of the building would be in the $30- to $40-million range, perhaps more. However, no documentation in support of any of these estimates or appraisals was produced. It was noted further that, without the receiver certificates, the only other viable option was Chapter 11 bankruptcy. Gann informed the court that he was seeking additional tenants for the building and had submitted bids to the GSA for other government tenants. Counsel for Clune Construction expressed hope that a significant parking issue affecting the value of the building could be resolved with the City of Lombard.

¶ 12 Vader and the other parties opposed to the Receiver's motion made a variety of arguments. First, they contended that section 16 of the Mechanics Lien Act prohibited subordinating the mechanic's liens in the manner sought by the Receiver. Further, even if such were allowable, they

argued, the court had insufficient facts to conclude that doing so was in the best interests of all the parties. Moreover, notwithstanding the pre- and post-buildout/lease values proffered to the court by those supporting the Receiver's motion, no estimates or appraisals were submitted, by affidavit or otherwise, regarding the present value of the property, either as a vacant shell or a half or fully tenanted building, and the unsupported numbers provided varied greatly. They also pointed to the liquidated-damages provision of the GSA lease, which was estimated at $10,000 per day starting in May 2020, if the property were not ready for tenancy. They noted the significant parking issues affecting the value of the building, which might or might not be resolved in coordination with the City of Lombard. Also, concerns were raised that the prospective lender on the receiver certificates, which was to receive first priority and 10 to 12% interest, was none other than the PCG, which was the foreclosure plaintiff and the joint movant for the receiver certificates. Similarly, questions were raised about Clune Construction and the suggestion that Clune would again be the general contractor for the $12 million buildout. Some of the parties in opposition held open the possibility that they might agree to the Receiver certificates if there were more information to support the Receiver's assertions, but all agreed that the record was insufficient to show that doing so was in their best interests at this stage.

¶ 13 At the conclusion of the arguments, the trial court granted the Receiver's motion. Specifically, the court ruled:

> "THE COURT: All right.
>
> There are a lot of uncertainties in this case, but there are a couple of things that are certain.
>
> One is if the receiver certificate is not granted, the GSA goes away.

Another thing that is certain is if we proceed along the lines of foreclosing the mechanic's liens, we're going to have at least a month-long trial on the issue of enhancement. In the best-case scenario, the lien claimants would get, maybe, 30 cents on the dollar. In the worst-case scenario, which is more likely, they would get zero.

Another thing that is certain is that you probably can't ask for a better, more secure tenant than the GSA because the full faith and credit of the U.S. government is behind it. Although that may be shaky at times, it's better than anything else.

I think it is certainly in the best interest of all of the parties, the lender, and all of the mechanic's lien claimants that the receiver be authorized to proceed with the build-out for the GSA and any other viable tenants who may take a leasehold interest in this property.

I believe that the Pittsburgh Plate Glass case [(*Pittsburgh Plate Glass Co. v. Kransz*, 291 Ill. 84 (1919))], even though it is an old case, establishes precedent for the ability of the Court to issue the receiver certificates.

I am certainly going to require Mr. Gann to use his best efforts in the marketplace to get the best interest rates, the best terms, the best everything for the loan.

Ten percent, at first blush, seems outrageous. But I assume that with the receiver certificate, you'll be able to negotiate something that is better for all of the parties, and I am charging you do that.

MR. GANN: I will do my best, your Honor.

THE COURT: I understand all of the concerns that everyone has. I truly believe that this is in the best interest of all the parties. Your clients are going to have to wait to get money, but I think in the long run they'll get a heck of a lot more money than they would have if we proceed with litigation as to enhancement of the property and priorities.

So I will leave it to all of you to prepare the order."

¶ 14 The parties then prepared a written order that was signed by the trial court, stating in relevant part that "[t]he Receiver's Certificates will be deemed a priority lien only with respect to the funds issued through the Receiver's Certificates ($12M) which shall be repaid prior to all incumbrancers [*sic*] and claims, including but not limited to deeds of trust or mechanics liens."

¶ 15 On March 6, 2020, Vader, Hill and Imbert jointly filed in this court a timely interlocutory appeal as a matter of right, pursuant to Illinois Supreme Court Rule 307(a)(3) (eff. Nov. 1, 2017).[1]

¶ 16                                    II. ANALYSIS

¶ 17                         A. The Power to Grant and Prioritize Receiver

Certificates Over Prior Mechanics Liens

¶ 18 Initially we consider the lienholders' claim that the trial court erred in prioritizing the receiver certificates over their mechanic's liens, because section 16 of the Mechanics Lien Act, which governs the priority of incumbrances, expressly forbids doing so. We review *de novo* the construction of a statute. *Whitaker v. Wedbush Securities, Inc.*, 2020 IL 124792, ¶ 16.

¶ 19 Section 16 of the Mechanics Lien Act provides in pertinent part:

"No incumbrance upon land, created before or after the making of the contract for improvements under the provisions of this act, shall operate upon the building erected, or materials furnished *until a lien in favor of the persons having done work or furnished material (hereinafter 'lien creditor') shall have been satisfied*, and upon any questions arising between incumbrancers and lien creditors, all previous incumbrances shall be

---

[1] Clune Construction Company has filed a brief in favor of the Receiver's (Appellee) position, though it persists in calling itself a "Co-Defendant-Appellant" because of its original status as a defendant in the case. Imbert has voluntarily dismissed its appeal.

preferred only to the extent of the value of the land at the time of making of the contract for improvements, but shall not be preferred to the value of any subsequent improvements, and each lien creditor shall be preferred to the value of all the subsequent improvements erected on said premises ***." (Emphasis added.) 770 ILCS 60/16 (West 2018).

¶ 20 The purpose of the Mechanics Lien Act is to "permit a lien upon premises where a property owner received a benefit from improvements to his property or realized an increase in property value because of a contractor's labor and materials." *Gateway Concrete Forming Systems v. Dynaprop XVIII*, 356 Ill. App. 3d 806, 809 (2005). To effectuate this purpose, section 16 gives the lienholder priority over any other incumbrance until the lienholder is paid. The lienholders argue that the mandatory language in section 16 allows for no exceptions to the priority of mechanic's liens, as the word "shall" in a statute generally reflects a "legislative intent to make a law or provision mandatory." *Kaplan v. Tabb Associates, Inc.*, 276 Ill. App. 3d 320, 323-24 (1995). They contend that, to the extent that the trial court resorted to its equitable powers in reprioritizing the liens to accomplish the desired outcome of securing the GSA lease, it erred, because "equity follows law." See *First Federal Savings & Loan of Chicago v. Walker*, 91 Ill. 2d 218, 226-27 (1982); *Stone v. Gardner*, 20 Ill. 304, 309 (1858) (no power exists permitting court of equity to dispense with the plain requirements of the statute).

¶ 21 In support of prioritizing the receiver certificates to secure the GSA lease and maximize the financial return in the best interests of all the parties, the Receiver cited, and the trial court relied upon, our supreme court's opinion in *Pittsburgh Plate Glass Co. v. Kransz*, 291 Ill. 84 (1919). In recounting the procedural and factual history in *Pittsburgh Plate Glass*, we simplify to the extent possible and focus on those aspects germane to our fact pattern, which is admittedly similar other than the great disparity in the dollar amounts at issue.

¶ 22 In *Pittsburgh Plate Glass*, the owners of a lot executed notes for $7500 secured by a trust deed to Henry Kransz for the purpose of developing a building on the lot. The owners then engaged a general contractor for $10,500 to build the building. The general contractor engaged four subcontractors, including Pittsburgh Plate Glass, all of which provided material and labor in constructing the building. Prior to the building's completion, the general contractor was adjudicated bankrupt and the owners did not have the additional monies necessary to hire a new general contractor to finish the project. The four subcontractors filed a bill in the circuit court against the owners, the general contractor, and Kransz to enforce their liens. Kransz answered the bill, asserting that he owned the notes secured by the trust deed, and claimed that his lien on the property was prior to the subcontractors' liens. Kransz also filed a cross-bill to foreclose his trust deed.

¶ 23 On Kransz's motion, the circuit court appointed a receiver "with the power to take possession of the premises, complete the building, borrow money for that purpose, and secure the same by receiver certificates secured by a mortgage on the premises, *which should be a first lien on the property and prior to the liens of all the parties*." (Emphasis added.) *Id.* at 87. The subcontractors did not seek leave to appeal the circuit court's order that subordinated their liens, and the certificates were issued and the building completed. In the interim, the matter was referred to a master in chancery to take testimony and report his conclusions. The master reported the various monies owed to the subcontractors and concluded that their liens were first liens on the property. The chancellor agreed with the master and entered a decree that the amounts owed the subcontractors were first and prior liens, that the receiver certificates and trust deed were a second lien, and that Kransz had a third lien. The chancellor ordered the building sold and the proceeds so distributed. The owners, Kransz, and the receiver appealed the chancellor's order, and the

appellate court affirmed. The owners, Kransz, and the receiver then were granted *certiorari* to appeal to the supreme court, where they argued that Kransz's and the receiver's liens should have been prior to those of the subcontractors. Kransz did not dispute the priority of the receiver's lien to his own.

¶ 24 The supreme court reversed the chancellor's decree, noting that section 12 of the mechanic's lien statute then in effect (1903 Ill. Laws 235 (§ 12); see Ill. Rev. Stat. 1917, ch. 82, § 26) (1903 Act[2]) "authorizes the court to appoint a receiver for property on which liens are sought to be enforced, in the same manner and for the same causes and purposes as in cases of foreclosure on mortgages, as well as to complete any unfinished building when it is deemed to be for the best interests of all the parties." *Pittsburgh Plate Glass*, 291 Ill. at 92. The court then held that "*the power is implied to make the appointment effective by making the receiver's certificates a first lien in cases such as this.*" (Emphasis added.) *Id.* The court acknowledged that, although this practice was regularly recognized and applied more typically to railroads and public service corporations, it could "be exercised in cases of individuals and private corporations *with great caution* \*\*\* when circumstances seem to warrant." (Emphasis added.) *Id.* at 92. The court then reviewed the showing made on the application for the appointment of the receiver and ultimately reversed the judgment of the appellate court and the decree of the chancellor, concluding, "[u]nder the facts and circumstances of this case, we are of the opinion that the trust deed \*\*\* securing the receiver's certificates should have been made a first lien and the claims of [the subcontractors] should have been made second liens." *Id.* at 94. Thus did the *Pittsburgh Plate Glass* court construe section 12 of the 1903 Act, which we observe is largely identical to section 12 of the current

---

[2] While largely identical to the 1903 Act, the current Mechanics Lien Act was officially given its name only in 1990. Pub. Act 86-1324 (eff. Sept. 6, 1990 (adding 770 ILCS 60/0.01).

Mechanics Lien Act, to authorize the trial court to reprioritize mechanic's liens. Compare Ill. Rev. Stat. 1917, ch. 82, § 26, with 770 ILCS 60/12 (West 2018).

¶ 25 To escape the holding of *Pittsburgh Plate Glass*, the lienholders argue that the supreme court's statements regarding the power to reprioritize the subcontractors' liens are *dicta* and not binding on the trial court here. In support, they point to the supreme court's observation that the subcontractors did not prosecute an appeal from the circuit court order subordinating their liens to the receiver certificates, that this order was not subject to collateral attack, and that the subcontractors' "right now to be heard in opposition *** is, to say the least, doubtful." *Pittsburgh Plate Glass*, 291 Ill. at 93. Though we note parenthetically that "*obiter dicta* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court" (*Cates v. Cates*, 156 Ill. 2d 76, 80 (1993)), we otherwise disagree that the complained-of language in *Pittsburgh Plate Glass* is *dicta*. Indeed, the lienholders' argument in this regard arises from their misunderstanding of the admittedly byzantine procedural history leading up to the *Pittsburgh Plate Glass* decision. The *Pittsburgh Plate Glass* subcontractors' right to be heard in opposition was "doubtful" because they did not appeal the circuit court's reprioritization of their loans. *Pittsburgh Plate Glass*, 291 Ill. at 93. Nevertheless, the propriety of that very reprioritization was directly before the supreme court on the receiver's appeal from the subsequent decree of the chancellor, affirmed by the appellate court, making the receiver certificates subordinate to the subcontractors' liens. *Id.* at 88. Thus, while the *Pittsburgh Plate Glass* subcontractors might have been defaulted, the very issue we are called to decide in the instant case was raised and decided in the context of the receiver's case.

¶ 26 Nor do we find availing the lienholders' argument that *Pittsburgh Plate Glass* is inapposite because it makes no reference to section 16—discussing only section 12 of the 1903 Act. Initially

we note that, in all pertinent provisions, the current iterations of both sections 12 and 16 are identical to the predecessor sections of the 1903 Act. Compare Ill. Rev. Stat. 1917, ch. 82, § 30, with 770 ILCS 60/16 (West 2018); and Ill. Rev. Stat. 1917, ch. 82, § 26, with 770 ILCS 60/12 (West 2018). Though the *Pittsburgh Plate Glass* court did not specifically reference the prioritization of mechanic's liens provided for in section 16, there can be no question that the court addressed section 12's implicit authorization to prioritize receiver certificates over mechanic's liens in the context of section 16's prioritization of these liens. To suggest otherwise ignores that mechanic's liens have priority only by virtue of section 16, which is in derogation of the common law. *Westcon/Dillingham Microtunneling v. Walsh Construction Co.*, 319 Ill. App. 3d 870, 877 (2001).

¶ 27 Finally, assuming *arguendo* that *Pittsburgh Plate Glass* is pertinent here, the lienholders ask us not to follow it, because it is at odds with the more recent incarnations of section 16 of the Mechanics Lien Act and the public policy underlying its prioritization of mechanic's liens. This argument, however, necessarily fails upon review of section 16 of the 1903 Act, in effect at the time of the *Pittsburgh Plate Glass* decision, which addressed the priority of incumbrances under the statute and is identical in all pertinent parts to the current version of section 16. Compare Ill. Rev. Stat. 1917, ch. 82, § 30, with 770 ILCS 60/16 (West 2018). Nor do we find the opinions the lienholders cite from Nevada (*In re Fontainebleau Las Vegas Holdings*, 289 P.3d 1199 (Nev. 2012)) and Utah (*Olsen v. Chase*, 2011 UT App 181, 270 P.3d 538), which prohibit the reprioritization of mechanic's liens on public-policy grounds, to be persuasive authority. Regardless of their merits, we are bound by our supreme court's interpretation of the 1903 Act in *Pittsburgh Plate Glass*, which, again, is largely identical to the current version of the Mechanics

Lien Act. See *People v. Artis*, 232 Ill. 2d 156, 164 (2009) ("[t]he appellate court lacks authority to overrule decisions of [the supreme court], which are binding on all lower courts").

¶ 28 Accordingly, we find that, pursuant to the Mechanics Lien Act as interpreted by our supreme court in *Pittsburgh Plate Glass*, the trial court had the power to issue receiver certificates and prioritize them over the mechanic's liens.

¶ 29                    B. Sufficiency of the Evidence to Issue Receiver

Certificates and Reprioritize the Liens

¶ 30   We next consider the lienholders' contention that, even if the trial court had the authority to issue receiver certificates and prioritize them over the mechanic's liens, the trial court erred in doing so on the evidence presented. In support they note *Pittsburgh Plate Glass*'s admonition that courts should exercise "great caution" in reprioritizing mechanic's liens, which they contend has been interpreted to mean that the receiver certificates must be (1) in the interest of all parties and (2) necessary to preserve the property. *Pittsburgh Plate Glass*, 291 Ill. at 92; *Equitable Trust Co. of New York v. Chicago, Peoria & St. Louis R.R. Co.*, 223 Ill. App. 445, 448 (1921). They argue that there was insufficient evidence presented on either point.

¶ 31 Initially we must determine what standard of review applies to the trial court's decision to issue the receiver certificates and prioritize them over the liens. The lienholders argue that the trial court's decision applied uncontroverted facts to the law such that our review should be *de novo*. See *Norskog v. Pfiel*, 197 Ill. 2d 60, 70-71 (2001). The Receiver argues that the trial court considered mixed questions of law and fact such that the court's decision may be reversed only if it is against the manifest weight of the evidence. See *Zeitz v. Village of Glenview*, 304 Ill. App. 3d 586, 592 (1999). Clune Construction argues that the abuse-of-discretion standard of review applies. See *Town of Vandalia v. St. Louis, Vandalia & Terre Haute R.R. Co.*, 209 Ill. 73, 79

(1904) ("[t]he power to issue receiver's certificates is to be exercised very largely in the discretion of the court, and if the discretion is not abused the act of the court will not be set aside"); likewise, it argues that the same standard of review ordinarily applies to a court's decision "to continue a business in the hands of a receiver, and to charge the expenses thereof on the corpus of the property." *Cody Trust Co. v. Hotel Clayton Co.*, 293 Ill. App. 1, 16 (1937) ("the court, in its discretion, has such right upon a proper showing being made").

¶ 32  We agree with Clune in that "[r]eview for abuse of discretion is proper when the trial court is called upon to exercise its equitable powers (*Seymour v. Collins*, 2015 IL 118432, ¶ 41), or when it must, for lack of a better phrase, make a judgment call." *People v. Chambers*, 2016 IL 117911, ¶ 75. "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41 (citing *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, ¶ 114).

¶ 33 Our survey of Illinois case law discloses that the century-old decision in *Pittsburgh Plate Glass Co.*, 291 Ill. 84, was the first and last opinion in Illinois affirming the subordination of mechanic's liens to fund receivers' certificates, as the trial court did here. And while the trial court certainly had the power to do so, we must review this decision in light of our supreme court's admonition that the power should be exercised with "great caution." *Id.* at 94.

¶ 34 Section 12 of the Mechanics Lien Act provides in pertinent part:

"The court shall have power to appoint receivers for property on which liens are sought to be enforced in the same manner for the same causes and for the same purposes as in cases of foreclosure of mortgages, as well as to complete any unfinished building where the same

is deemed to be to the best interest of all the parties interested." 770 ILCS 60/12 (West 2018).

In *Pittsburgh Plate Glass*, the amount borrowed and secured by the receiver certificates, some $4200, was used to place doors and windows on the building and otherwise complete the construction so that it would not succumb to the elements and could be sold—actions specifically referenced in section 12. See *Pittsburgh Plate Glass*, 291 Ill. at 92 ("complete any unfinished building where the same is deemed to be to the best interest of all the parties"); 770 ILCS 60/12 (West 2018).

¶ 35   What is contemplated under the instant receiver certificates, which will fund $12 million  in construction activity, certainly goes beyond the mere completion of an unfinished building so that it can be sold expeditiously and allow the lienholders to recoup more of their money than in a foreclosure scenario. Unlike the *Pittsburgh Plate Glass* building, the 747 property is not in any danger from the elements due to missing doors or windows and could be sold as a shell in its current state. Rather, what is contemplated is building out leased space to the tune of $8 million, with approximately $4 million in additional improvements, so that the GSA can take possession of the leasehold under the terms of the signed lease—space that most if not all of the lienholders' construction activities had nothing to do with, having been retained for projects related to the Pomeroy lease.

¶ 36   While the trial court's order encompasses more than the mere completion of an unfinished building, this does not necessarily run afoul of section 12, which further provides that a receiver is appointed "in the same manner for the same causes and for the same purposes as in cases of foreclosure of mortgages."  770 ILCS 60/12 (West 2018). Section 15-1704 of the Mortgage

Foreclosure Law, incorporated by reference in section 12, provides as follows with respect to the powers of a receiver in a foreclosure action:

"Powers. A receiver appointed pursuant to this Article shall have possession of the mortgaged real estate and other property subject to the mortgage during the foreclosure, *shall have full power and authority to operate, manage and conserve such property*, and shall have all the usual powers of receivers in like cases. Without limiting the foregoing, a receiver shall have the power and authority to:

(1) *secure tenants and execute leases for the real estate*, the duration and terms of which are reasonable and customary for the type of use involved, and such leases shall have the same priority as if made by the owner of the real estate; but, unless approved by the Court, the receiver shall not execute oil, gas or other mineral leases, or (even if otherwise allowed by law) leases extending beyond the time of the receiver's possession; provided, however, with respect to residential real estate leased by the receiver, nothing in this section shall affect the legal rights of any lessee with respect to the safety and habitability of the residential real estate;

(2) *collect the rents, issues and profits from the mortgaged real estate*;

(3) insure the mortgaged real estate against loss by fire or other casualty;

(4) *employ counsel, custodians, janitors and other help*; and

(5) pay taxes which may have been or may be levied against the mortgaged real estate." (Emphases added.) 735 ILCS 5/15-1704(b) (West 2018).

¶ 37 Insofar as the version of section 12 construed by the *Pittsburgh Plate Glass* court also incorporated the Mortgage Foreclosure Law's receiver powers by reference, we conclude that the implied power to subordinate mechanic's liens to receiver certificates likewise applies to

certificates issued to achieve section 15-1704 purposes. Compare Ill. Rev. Stat. 1917, ch. 82, § 26, with 770 ILCS 60/12 (West 2018).

¶ 38 Concluding that section 16 does not prohibit the subordination of the mechanic's liens here, given *Pittsburgh Plate Glass*'s interpretation of section 12, we next note that the trial court has equitable powers to subordinate existing liens to a receiver's certificate where such action is (1) necessary to preserve the collateral and (2) in the best interests of all the parties. See *Equitable Trust Co.*, 223 Ill. App. at 448; *Cody Trust Co.*, 293 Ill. App. at 17 ("making receiver certificates a first lien "may be done in receiverships of industrial corporations when it is made very clear to the court that it is for the *best interests of all parties* that the power be exercised *in order to preserve the corporate property* or the franchise of the corporation" (emphasis added and internal quotation marks omitted)).

¶ 39 While it is not necessary that every lienholder agree to the subordination of its lien for the court to find it in the best interests of all the parties, "[t]he court has no power to authorize the receiver of an industrial corporation to continue the business and to make receiver's certificates superior to prior liens, without the consent of the holders of such liens, *unless it be apparently necessary* to do so in order to preserve the corporate property." (Emphasis added and internal quotation marks omitted.) *Cody Trust Co.*, 293 Ill. App. at 17. "It is the exception, and not the rule, that such priority of liens can be displaced." (Internal quotation marks omitted.) *Id.* at 15-16.

¶ 40 In reviewing the record here, we cannot but note that the GSA lease was the sole evidence underlying the trial court's decision to subordinate the mechanic's liens behind an additional $12 million in debt. It seems likely, as the Receiver posits, that the GSA lease, if it goes through, will increase the value of the building. But will this be to the benefit of all the parties? Here the court was presented with absolutely no evidence from which to conclude that subordinating the

lienholders to an additional $12 million in debt would be to their benefit. There was no evidence as to the current value of the building. There was no evidence as to what the value of the building would be with the GSA as a tenant. Though various counsel alluded to estimates and tentative appraisals at argument, no affidavits, estimates, or other related evidence was provided to the court in support of the various figures bandied about at the hearing. When the lienholders raised a concern that the alleged appraisals were so varied, the court interrupted, suggesting that, after 32 years on the bench, the court was hardly surprised that appraisals would vary.

¶ 41 We have no doubt that appraisals can vary, but the problem here is that there were *no* appraisals, estimates, or expert testimony entered into evidence. Rather, the court was left to speculate as to whether the prioritized $12 million in debt spending, at 12% interest, would ultimately benefit all the parties. As previously noted, a trial court's exercise of its equitable powers to prioritize receiver certificates over mechanic's liens is contingent upon a factual determination that doing so is in the interest of all the parties and necessary to preserve the property. *Pittsburgh Plate Glass*, 291 Ill. at 92; *Equitable Trust Co. of New York v. Chicago, Peoria & St. Louis R.R. Co.*, 223 Ill. App. at 448. Here the trial court had no basis in the record to conclude that the prioritized receiver certificates would benefit all the parties. Accordingly, the trial court's decision to issue the prioritized certificates was an abuse of discretion.

¶ 42                                        III. CONCLUSION

¶ 43 We find that the trial court abused its discretion where it concluded, without sufficient evidence, that (1) making $12 million in receiver certificates a first lien, *vis-à-vis* the mechanic's liens, was in the lienholders' best interests or (2) doing so was "apparently necessary to preserve the property," over the objection of certain lienholders.

¶ 44    The judgment of the circuit court of Du Page County granting the receiver certificates is

reversed and the matter remanded for proceedings consistent with this opinion.

¶ 45    Reversed and remanded.

**No. 2-20-0193**

| | |
|---|---|
| **Cite as:** | *REEF-PCG, LLC v. 747 Properties, LLC*, 2020 IL App (2d) 200193 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 19-CH-1327; the Hon. Bonnie Wheaton, Judge, presiding. |
| **Attorneys for Appellant:** | Daniel Brennan, Chad Shifrin, and Craig G. Penrose, of Laurie & Brennan, LLP, of Chicago, for appellant Vader National, LLC. Samuel H. Levin, of Bryce Downey & Lenkov LLC, of Chicago, for appellant Imbert International, Inc. Phillip Luetkehans and Brian J. Armstrong, of Luetkehans, Brady, Garner & Armstrong, LLC, of Itasca, for other appellants. |
| **Attorneys for Appellee:** | John Lipinsky and Gregory P. Adamo, of Clingen, Callow & McLean, LLC, of Lisle, for appellee REEF-PCG, LLC. Gregory R. Meeder and James P. Chivilo, of Holland & Knight LLP, of Chicago, for appellees Air Comfort Corporation and Applied Controls, Inc. Jeffrey L. Hamera and Keith M. St. Aubin, of Duane Morris LLP, of Chicago, for other appellee. Gregory Gann, of Deerfield, receiver. |